441 P.2d 42

Cecil JENNINGS, Plaintiff-Appellant,

v.

RUIDOSO RACING ASSOCIATION, Inc.,
a corporation, Defendant-Appellee.

No. 8140.

Supreme Court of New Mexico.

May 20, 1968.

Grantham, Spann & Sanchez, Albuquerque, for plaintiff-appellant.

Neal & Neal, Tom W. Neal, Hobbs, for defendant-appellee.

## OPINION

NOBLE, Justice.

Cecil Jennings, asserting that he was hired as comptroller of the Ruidoso Racing Association for the period May 1, 1963 to April 30, 1964 at a salary of $1,000 per month and was wrongfully discharged on May 18, 1963, sued for his salary. He has appealed from a judgment denying recovery.

The basis of the trial court's denial of recovery was that (1) there is no sufficient memorandum in writing of the oral contract of employment to satisfy the Statute of Frauds, and (2) the action of the corporation's board of directors in employing Jennings as comptroller was ultra vires and void.

The trial court found:

"* * *.

"6. * * * at which meeting [Board of Directors April 28, 1962] Cecil Jennings was first elected Treasurer of Ruidoso Racing Association at a salary of $1,000.00 per month or $12,000.00 per year.

"7. The By-laws of Ruidoso Racing Association provide the duties of the treasurer of the corporation and those duties were further outlined in the meetings of April 21, 1962 and July 12, 1962 and included all of the duties performed by Cecil Jennings in connection with the fiscal activities of the corporation.

* * * * * *

"10. The only written memorandum relating to the contract of employment is the minutes of the corporation on March 15, 1963, together with the checks and payroll records theretofore issued or compiled in connection with Cecil Jennings' tenure as Treasurer of the corporation for the year beginning May 1, 1962.

"11. At the meeting of March 15, 1962 [sic], the Board of Directors attempted to employ Cecil Jennings to perform the same duties he had theretofore performed for the salary being paid to him as treasurer of the corporation but designated his employment as being that of controller instead of treasurer in order to avoid the effect of the By-Laws of the corporation requiring the election of a treasurer to be at the first meeting of the Board of Directors after the annual stockholders' meeting. The minutes of this meeting were signed by Cecil Jennings as Secretary of the corporation and approved by Jim Derrick as President of the corporation.

"12. There is no evidence in the record disclosing any duties to be performed by the controller of Ruidoso Racing Association not required of the treasurer and no action of the corporation establishing the office of controller or defining its duties.

"13. The alleged oral employment contract contemplated plaintiff would perform the same duties for the corporation that had theretofore been performed by him as treasurer."

From these facts, the court concluded:

"* * *.

"2. The oral contract which formed the basis of plaintiff's action cannot be enforced under the statute of frauds by reason of the fact there is no sufficient memorandum in writing to establish such contract or its terms and conditions.

"3. Any action by the Board of Directors of Ruidoso Racing Association attempting to elect a treasurer prior to the annual meeting of the stockholders of the corporation to be effective after the first meeting of the Board of Directors of the corporation subsequent to the annual stockholders' meeting is ultra vires and void.

"4. There is a fatal variance between the terms of the claimed oral contract and the written memorandum introduced to establish the terms, conditions and pro-

visions of such oral contract by reason of which the same is unenforceable under the provisions of the statute of frauds.

"5. * * *."

The pertinent portion of the fourth section of the English Statute of Frauds and Perjuries (29 Charles II, ch. III) has been adopted in New Mexico, Pitek v. McGuire, 51 N.M. 364, 184 P.2d 647, 1 A.L.R.2d 830. Section four reads:

" * * * no action shall be brought * * * upon any agreement that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or some other person thereunto by him lawfully authorized."

■ The complaint alleges that the employment for which the action is brought was to commence May 1, 1963 and continue for a period of one year. For the purpose of determining whether the period for performance brings the agreement within the statute of frauds, the time begins to run from the day the contract is entered into. See Annot., 138 Am.St.Rep. 590, 611. It is thus generally held that a contract for a year beginning at a future date, as was this one, is within the statute. 49 Am.Jur. Statute of Frauds, § 24; Columbia Pictures Corp. v. De Toth, 26 Cal.2d 753, 161 P.2d 217, 162 A.L.R. 747.

We are thus concerned with whether the record discloses some memorandum or note in writing signed by an authorized person on behalf of Ruidoso Racing Association sufficient to satisfy the statute of frauds. Jennings strongly urges that the writings may consist of several instruments, and introduced excerpts of the minutes of the board of directors of March 15, 1963 and a check as writings sufficient to satisfy the statute. Thus, it is necessary for us to determine whether excerpts of the minutes of the March 15, 1963 meeting, together with a check subsequent thereto, will satisfy the statute of frauds.

The minutes of the March 15, 1963 meeting of the board of directors, admitted in evidence, contain the following:

"Director A. A. Bradford moved that in recognition of services performed, the corporate secretary, Cecil Jennings, be paid $1,000.00 as a bonus, and further that since the term of his original employment was near expiration, that he be hired as comptroller for the next succeeding year at his present rate of compensation. Ralph Nix seconded and it was so voted."

■ The parties agree that corporate minutes, if otherwise sufficient, may be used as a memorandum in writing to meet the requirements of the statute of frauds. See Fanney v. Virginia Inv. & Mortgage Corp., 200 Va. 642, 107 S.E.2d 414, 420. Those minutes were signed by the plaintiff as secretary and by the president of the corporation. They were, accordingly, signed by the party to be charged with the contract.

■ Does the excerpt from the above minutes sufficiently describe the duties which Jennings was hired to perform and prescribe the salary he was to receive? The statute is not pressed "to the extreme of a literal and rigid logic." Marks v. Cowdin, 226 N.Y. 138, 123 N.E. 139. The statute of frauds is intended to protect against a fraud, but it is not intended to be taken as an escape for those seeking to avoid their obligations. Keirsey v. Hirsch, 58 N.M. 18, 26, 265 P.2d 346, 43 A.L.R.2d 929. It must be remembered that the memorandum, sufficient to satisfy the statute of frauds, need not in itself amount to a contract. The contract in this instance is an oral agreement. The statute of frauds only requires that there be written evidence to prove that the particular contract was made. Pitek v. McGuire, supra. Clearly, Jennings was employed as "comptroller" of the corporation. The terms "comptroller" and "controller" are synonymous. Roget's International Thesaurus 482 (New Ed.); Black's Law Dictionary 399 (4th Ed.). These terms have a well-defined meaning without further explanation. "Controller"

is defined in Webster's Third New International Dictionary, p. 497, as:

"1a:. * * * c: the chief accounting officer of a business enterprise whose duties usually include responsibility for all accounting, budgeting, costing, and internal auditing functions, the measuring of performance against previously approved plans and standards, and the interpreting and reporting thereon to other members of the management responsible for policy or executive action. d: comptroller 2a: one that controls or has power or authority to control. * * *"

In Fanney v. Virginia Inv. & Mortgage Corp., supra, a memorandum describing the employment of the cross-complainant as "executive-secretary" was held to sufficiently describe the service to be performed.

In Boswell v. Rio De Oro Uranium Mines, Inc., 68 N.M. 457, 362 P.2d 991, we said:

"A memorandum sufficient to satisfy the Statute of Frauds need not be contained in a single writing but may consist of several writings if (1) each writing is signed by the party to be charged * * *."

■ Does the memorandum sufficiently fix Jennings' rate of pay? In Marks v. Cowdin, supra, a recital in the written memorandum that the plaintiff's employment was to be continued for a term and stated salary was held to be sufficient. The New York court there said that the memorandum provided that the position then held was to be continued, and that:

"The tests to be applied in order to identify the employment are thus embodied in the writing. We are not left to gather the relation between the parties from executory promises. We are informed that the relation then existing is the one to be maintained. * * *"

The reasoning of the New York court is equally applicable to the recital "at his present rate of compensation." However, in addition to the excerpt from the minutes of the meeting of March 15, 1963, the record discloses a salary check signed by authorized persons on behalf of the corporation, and it clearly indicates that it relates to the salary paid Jennings for a portion of the period for which he claims employment pursuant to the minutes of the March 15, 1963 meeting. These writings together contain all the essential terms of the agreement between the parties necessary to satisfy the statute of frauds. Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551.

■ Cecil Jennings was employed by the board of directors as comptroller for the year ending April 30, 1963, and was elected treasurer for the same period. The board of directors at its March 15, 1963 meeting re-employed him as comptroller for the succeeding year. The by-laws provide that the corporation's officers shall be elected annually following the election of directors, and that the officers shall hold office until their successor is elected and qualified. The trial court's finding No. 11, upon which the judgment rests, is attacked as being unsupported by substantial evidence. The court there found that the employment of Jennings as comptroller was an attempt to avoid the effect of a by-law requiring the election of a treasurer following the annual election of directors.

It is not disputed that the by-laws provide that the corporation's officers shall be elected following the annual election of directors, and that Jennings' employment as comptroller was prior to the annual election of directors. However, it must be remembered that during the preceding year Jennings had been employed as comptroller and elected treasurer of the corporation. Jennings' employment as comptroller would terminate April 30, 1963 but he would hold over as treasurer until his successor to that office was elected and qualified. The board of directors then in office, accordingly, re-employed him as comptroller for the succeeding year. The only evidence brought to our attention which is said to

support the court's finding that Jennings' employment as comptroller was an attempt to circumvent the by-law prohibiting the board, at that meeting, from electing him treasurer is the fact that during the month of April 1963, he did perform essentially the same duties he had performed during the preceding year. Certainly the fact that during April 1963 Jennings performed the same duties he had performed during the preceding year could not give rise to a permissible inference that he had been employed to perform the same duties nor that the board of directors by employing him as comptroller attempted to circumvent the by-law. He was performing the same duties because during that time he was the duly qualified and acting treasurer as well as the employed comptroller. That is not to say that when a successor as treasurer was elected and qualified, he would continue to perform the duties of treasurer as well as those of comptroller.

"Treasurer" is defined by Webster's Third International Dictionary as: "An officer entrusted with the receipt, care and disbursal of funds." A comparison with the definition of "controller," supra, discloses the difference in the duties of the two positions.

■ The contract employing Jennings as comptroller was not contrary to public policy nor prohibited by any statute limiting the corporate powers. Furthermore, an ultra vires contract is one not within the express or implied powers of the corporation as fixed by its charter, the statute or the common law. 7 Fletcher, Cyclopedia Corporations (Perm.Ed.) § 3399, and cases there cited. The trial court was accordingly in error in concluding that Jennings' employment was contrary to the corporation's by-laws. By-laws cannot make an act ultra vires or illegal. 7 Fletcher, Cyclopedia Corporations (Perm.Ed.) § 3436. The contract employing Jennings as comptroller was neither contrary to public policy nor prohibited by any statute limiting the corporation's powers, nor has it been shown to have been contrary to any charter provision.

The above concept of ultra vires must be distinguished from the concept of nullification of contract by a by-law. In this case the contract was in fact not nullified by the by-law requiring election of a treasurer after the annual election of directors. In the first place, we have held that the office of "comptroller" has well-defined and generally accepted duties entirely different from those commonly understood to be the duties of a "treasurer." The record in this case does not disclose any definition of the duties of the two offices contrary to those generally accepted.

■ In any event, even if the by-laws could be interpreted to prohibit employment of a comptroller prior to the annual election of directors, absent a contrary by-law adopted by the stockholders, the directors have power to make or amend the by-laws. § 51–6–1, N.M.S.A.1953 (repealed by L.1967, ch. 81, § 135). A silent record as to any such stockholders' action amounts to failure of the defendants to maintain their burden of showing a lack of authority in the directors to enact or amend the by-law. The decisions dealing with the relation of by-laws and contracts under varying conditions were extensively reviewed in Realty Acceptance Corp. v. Montgomery, 51 F.2d 636 (3rd Cir.). There it was said, respecting the contention that a contract contrary to a by-law is null and void:

"None of these cases holds, either directly or by analogy, that a by-law, subject to amendment by a majority of the board, nullifies a contract expressly authorized by the board."

The contrast between a self-imposed limitation of power that may be removed at will, and one imposed upon the board by a general statute declaring a public policy, or by the articles of incorporation, was then said to be "sharp and striking." That court went on to say:

" * * * To read into a contract of employment for a definite period, expressly authorized by the board of directors, a by-law amendable by a majority of the board, and thus nullify the contract,

would sacrifice substance and straight-forwardness for form and procedure.
\* \* \* "

The action of the board of directors in entering into the employment contract "modified in its legal effect all inconsistent by-laws and prevails over them." See also Machen, Modern Law of Corporations, § 728; 8 Fletcher, Cyclopedia Corporations (Perm.Ed.) § 4179; Flaherty v. Portland Longshoremen's Benevolent Soc'y, 99 Me. 253, 59 A. 58.

It would thus make no difference whether the employment of Jennings for the year beginning April 1, 1963, did in fact amount to his employment to perform all of the duties he had formerly performed, because the action of the board of directors in so employing him constituted an implied modification of any inconsistent by-law and prevails over it.

The case must be reversed with direction to vacate the judgment and to proceed further in a manner not inconsistent with this opinion.

It is so ordered.

DAVID CHAVEZ, C. J., and CARMODY, J., concur.