**Roland L. FERRERA,**
**Plaintiff, Appellant,**

v.

**CARPIONATO CORPORATION,**
**Defendant, Appellee,**

**Roland L. FERRERA,**
**Plaintiff, Appellee,**

v.

**CARPIONATO CORPORATION,**
**Defendant, Appellant.**

**Nos. 89–1391, 89–1478.**

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1989.

Decided Feb. 7, 1990.

Marc B. Gursky, with whom Lovett, Schefrin, Gallogly & Harnett, Ltd., Providence, R.I., was on brief for plaintiff.

Martin W. Aisenberg, with whom Robert S. Thurston and Jones & Aisenberg, Providence, R.I., were on brief for defendant.

Before CAMPBELL, Chief Judge, and BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

A federal district court jury awarded plaintiff Roland Ferrera $30,000 in damages on his breach of contract claim against defendant Carpionato Corporation. The defendant moved for a directed verdict on two alternative grounds: (1) the statute of frauds was not satisfied; and (2) no reasonable jury could have found that the parties had entered into an employment contract. The district court rejected the first argument but accepted the second, and thus directed a verdict against the plaintiff. On appeal, we find that the district court erred in rejecting the statute of frauds argument. Thus, without reaching the argument on which the district court based its decision, we affirm the judgment against the plaintiff.

## I.

In the spring of 1985, Alfred Carpionato, the president of Carpionato Corporation (the company) interviewed Roland Ferrera for the position of head of construction operations. In the interview, Mr. Carpionato asked Ferrera numerous questions about his background in the construction business, explaining that the position required a "strong construction person" who could boost the company's poor reputation in the business community. A short time later, Ferrera was offered the job.

Ferrera agreed to accept the job on the condition that he receive a written contract. Mr. Carpionato agreed to this condition and urged Ferrera to draft a contract for his review. A few weeks later, Ferrera sent Mr. Carpionato a draft contract, which both parties signed on April 26, 1985.

The contract included the following terms, among others: (1) the contract would expire on March 31, 1986; (2) Ferrera would be paid $82,500 per annum until October 1, 1985, at which time he would receive an increase to $90,000; (3) Ferrera would be paid an annual bonus, to be determined by the company, as well as a bonus of five percent of any savings generated on each construction project; (4) Ferrera would receive three weeks annual vacation; (5) Ferrera or the company could terminate the agreement for any reason by giving the other party 60–days notice; and (6) upon termination of his employment, Ferrera would be entitled to 60–days severance pay.

Ferrera began work at the company on June 1, 1985. In May 1986, two months after the original one-year contract had expired, Ferrera sent Mr. Carpionato a proposed new contract with an explanatory memo. The draft agreement differed from the original contract in some respects, including its length (two years instead of one), its vacation allotment (four weeks instead of three), its required notice for termination (90 days instead of 60), its severance provision (90 days pay rather than 60 days) and its new "project participation section," in which the company would be obligated to provide Ferrera with a given percentage of the profits from at least one construction project per year.

Three provisions in the tendered draft agreement were left blank: (1) the amount of salary in the annual compensation section; (2) the percentage in the project participation section; and (3) the percentage in the bonus section. Ferrera's explanatory memo, dated May 15, alluded to the three blank provisions, stating, "[w]e must ... agree upon the necessary percentages pertaining to this upcoming contract ..." and "the contract is the same except for ... the determination of salary increase and percentages of various incentives."

During the next two months, Ferrera repeatedly asked Mr. Carpionato if he had reviewed and signed the new agreement. Eventually, Mr. Carpionato told him that he was going to sign the document. Ferrera then sent Mr. Carpionato a memo dated June 24, 1986, in which he thanked Mr. Carpionato for "accepting the complete terms of my revised and renewed contract as it was submitted, reviewed and approved by Angelo [the company's lawyer] and approved by yourself." It went on to request that, as "soon as you have the opportunity

to sign the document, I would appreciate a copy for my files." Despite this latter request, Ferrera never received the signed agreement from Mr. Carpionato.

The parties never orally nor in writing agreed as to the blank provisions of the written agreement, including the salary provision. Ferrera continued to receive an annual salary of $90,000, the amount he was receiving at the time the original contract had expired.

On August 28, 1987, approximately 17 months after the original one-year contract had expired, Mr. Carpionato fired Ferrera without giving him any notice.

On May 25, 1988, Ferrera brought this diversity suit in the District Court for the District of Rhode Island against Carpionato Corporation, seeking to enforce the severance provision of the second agreement and seeking damages for misrepresentation.

The jury trial was held on March 20, 1989. Before the case was sent to the jury, the judge dismissed the misrepresentation claim. The jury found for the plaintiff on the breach of contract claim and awarded damages of $30,000. The district court thereupon directed a verdict against the plaintiff on the grounds that the absence of an agreement on salary and other provisions meant that "no meeting of the minds ever took place" between the parties and that, therefore, as a matter of law, no contract had been formed. Plaintiff appeals.[1]

## II.

The Rhode Island Statute of Frauds bars any action based on an agreement that cannot be performed within one year from the date of its making, unless the essential terms of the agreement (or a memorandum discussing the agreement) are in writing and the agreement is signed by the defendant or one of his agents. *See* Rhode Island G.L.1956 (1985 Reenactment) § 9–1–4;[2] *Payne v. K–D Mfr.*, 520 A.2d 569, 571 (R.I.1987). Here, we must determine (1) whether the alleged employment agreement was within the statute of frauds as one that could not be performed within a year; and (2) if so, whether the draft agreement and related memoranda satisfied the requirements of the statute because (a) the essential terms of the agreement were in writing and (b) the agreement was signed by the defendant or one of his agents.

### 1. *Whether the instant agreement was within the statute*

The district court refused to hold that the two-year employment agreement (which included a 90–day termination provision) was within the statute of frauds as one that could not be performed within one year from the date of its making, reasoning that "the employee could die within a year and therefore the contract would be performed within a year."

This conclusion was erroneous under Rhode Island law. It is true that Ferrera could have died within one year from the agreement's inception. His death, however, would not have amounted to "performance" of the contract. Rather, death would simply have excused him from performing the contract. *See, e.g., Dickens v. Tennessee Elec. Power Co.*, 175 Tenn. 654, 137 S.W.2d 273 (1940) ("death ... would have defeated or terminated the contract, but the contract would have been unexecuted"); *cf. Kass v. Ronnie Jewelry, Inc.*, 118 R.I. 100, 371 A.2d 1060, 1062 (1977) (employment contract for greater than one

---

**1.** Defendant purports to "cross-appeal" from the district court's ruling, arguing that the district court erred in rejecting its statute of frauds argument. Because defendant seeks no change in the judgment below, we treat its argument on appeal as simply an alternative ground for upholding the judgment.

**2.** The statute reads in pertinent part:
No action shall be brought ... (5) [w]hereby to charge any person upon any agreement which is not to be performed within the space of one (1) year from the making thereof ... unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized.
G.L.1956 (1985) § 9–1–4.

year within statute of frauds); *Doughty v. Giffordline Chemical Co.*, 96 R.I. 223, 190 A.2d 480, 482 (1963) (same). *See generally* J. Calamari & J. Perillo, *Contracts* 810 (3rd ed. 1987) ("[T]he courts hold that where the contract is phrased in terms of a number of years rather than in terms of a lifetime, death operates as a *defeasance* of the contract rather than as its fulfillment.") (emphasis in original); A. Farnsworth, *Contracts* 395 (1982) ("Thus a promise by A to work for B for five years is within the one-year provision, even though A would be excused from performing it within a year if he should die within that time.").

Ferrera contends that the draft contract's 90–day termination provision demonstrates that it could have been performed within one year. This argument, however, is also unsupported under Rhode Island law. *See Wagniere v. Dunnell*, 29 R.I. 580, 73 A. 309, 310 (1909) ("a contract for a definite term longer than a year is not excluded from the operation of the statute of frauds because it contains a provision enabling either party to put an end to the contract within a year; the reasoning of the courts being that the recision of a contract is not the performance of it."). *See generally* J. Calamari & J. Perillo, *Contracts* 811 (3rd ed. 1987) (observing that with regard to such contracts, "the majority view is that the Statute is a defense because although *defeasance* is possible within a year *performance* is not") (emphasis in original); A. Farnsworth, *Contracts* 395 (1982) (stating that, according to many courts, "a contract under which A is to work for B and B is to employ A for five years is within the one-year provision, even if either A or B or both can terminate at any time on 30 days notice.").

As the instant agreement could not be "performed within the space of one (1) year from the making thereof," it was within the statute of frauds. Rhode Island G.L. 1956 (1985 Reenactment) § 9–1–4. Accordingly, we next ask whether Ferrera satisfied the statute by demonstrating that (a) the essential terms of the agreement were in writing; and (b) the agreement was signed by the defendant.

### 2. Whether the draft contract and other writings satisfy the statute

The Supreme Court of Rhode Island has stated that a writing cannot satisfy the statute of frauds unless it contains "all the material substantive terms of the contract, so that it is not necessary to resort to oral testimony to supply one or more of such terms and to make it complete and definite." *Wagniere v. Dunnell*, 29 R.I. 580, 73 A. 309, 311 (1909). In *Wagniere*, the plaintiff brought a breach of contract action based on the following written agreement:

> February 9th, 1906. Mr. Gustave Wagniere—Dear Sir: Understanding that you will give me your best ability as a finisher of cotton and silk or all silk goods especially, but of any other grade of goods within your knowledge and ability, I hereby agree to employ you at a compensation of fifty (50) dollars per week for three (3) years from the date hereof, or for so much of such three (3) years as your results show the ability that you now claim to be able to give me. Yours truly, Wm. Wanton Dunnell. Accepted: G. Wagniere. In presence of: Dudleight C. Collins.

*Id.* 73 A. at 310. The court found that the express condition that the results of the plaintiff's work should "show the ability that you now claim to be able to give me" was a material term of the contract but was "not fixed in the slightest degree in the defendant's letter to the plaintiff, which constitutes the only memorandum of the contract." *Id.* 73 A. at 311–312. The court refused to consider oral testimony or other parol evidence on this issue:

> [P]arties who entered into a contract which could not be wholly performed within a year must reduce it to writing, so as not to leave any of the material terms and provisions of the agreement to the changeable and unreliable memory of interested witnesses.

*Id.* 73 A. at 312. *See generally* J. Calamari & J. Perillo, *Contracts* 817 (3rd ed. 1987) ("[T]he Statute of Frauds has its own built-in exclusionary rule which excludes oral

evidence offered to supply essential terms.").

In the present case, the district court ruled that, even if within the statute of frauds, Ferrera's draft agreement constituted a sufficient memorandum to satisfy the statute. We disagree. The lack of an express salary term in the draft agreement and in related memoranda, as well as the absence of any stated percentage in the project participation and bonus sections of the agreement, constituted the omission of a material substantive term.

The amount of compensation was plainly a material term of employment. *See Gilinsky v. Sarbro Realty Corp.*, 138 A.D.2d 823, 525 N.Y.S.2d 742, 743 (1988) ("The essential terms of an employment contract are the parties to the contract, the position to be assumed, *the salary or compensation to be received* and the duration.") (emphasis added); *Kirschling v. Lake Forest School District*, 687 F.Supp. 927, 931 (D.Del.1988) ("salary is an essential part of most employment contracts"); *Jennings v. Ruidoso Racing Association, Inc.*, 79 N.M. 144, 441 P.2d 42, 44 (1968) (writing related to employment extension contract must "sufficiently describe the duties which [the employee] was hired to perform and prescribe *the salary he was to receive*") (emphasis added); *cf. MacKnight v. Pansey*, 122 R.I. 774, 412 A.2d 236, 241 (1980) (essential terms of agreement to sell land include names of the "seller and the buyer, their respective intention to sell and to purchase, a description of the subject matter of the sale, *the purchase price*, and terms of payment") (emphasis added). *See generally* 2 A. Corbin, *Corbin on Contracts* § 501 at 705 (1950) ("In contracts for the sale of lands or goods, or *for the rendition of services*, the price to be paid in exchange is as much the subject matter of the contract as is the land, the goods, or the services, and is of equal importance in the transaction.") (emphasis added).

Here, where the salary and other compensation provisions were left blank, the draft agreement did not satisfy the statute. *See Neujahr v. Producers Commission Association*, 838 F.2d 1003, 1004 (8th Cir.

1988) (three year employment agreement barred by statute of frauds where writing failed to contain various "material terms" of the agreement, including "the salary at which plaintiff was to be employed"); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1144 (3rd Cir.1972) (five year employment agreement barred by statute of frauds where writing "contains no definite salary term, and therefore does not satisfy the requirements of the statute of frauds"); *cf. Payne v. K–D Mfr.*, 520 A.2d 569, 571–572 (R.I.1987) (letter sent by employee-relations director confirming employee's salary satisfies the statute of frauds); *Jennings*, 441 P.2d at 45 (minutes of meeting at which parties agreed to extend employee's contract for one year "at his present rate of compensation" satisfies the statute of frauds).

Other written memoranda accompanying the draft agreement did not cure the omission here. To the contrary, Ferrera's memo of May 15 spoke of a need to determine a "salary increase and percentages of various incentives." *See generally* 37 *C.J.S.* § 195 at 682 ("A writing is insufficient where it discloses that any material terms of the agreement are left open to be settled by future conferences between the parties; in such a case there is no complete agreement."). Ferrera's memo dated June 24, 1986, in which he thanked Mr. Carpionato for "accepting the complete terms of my revised and renewed contract," did not mention compensation. Nothing in these memoranda suggests that the parties ever agreed to Ferrera's proposed "salary increase and percentages of various incentives," or, alternatively, that they rejected Ferrera's proposal and agreed to another compensation package. Following *Wagniere v. Dunnell*, we hold that the draft agreement and other memoranda did not include, as required, "all the material substantive terms of the contract." 73 A. at 312.

We add that even were we to ignore *Wagniere*'s command not to consider oral testimony to supply the essential terms, *see id.* at 312, the testimony in this case did not show that the parties implicitly agreed to a compensation package. To be sure, oral

testimony established that the company paid Ferrera $90,000 per year both before and after the agreement was purportedly in effect. The testimony did not establish, however, that these payments were in any way related to a multi-year employment agreement. *Cf. Mapes v. Kalva Corp.*, 68 Ill.App.3d 362, 24 Ill.Dec. 944, 948, 386 N.E.2d 148, 152 (1979) ("A check stub or even a signed paycheck indicates nothing except what a particular employee has been paid for a particular period. It does not act as a contract to pay the employee the same amount for even the next pay period, much less for an entire year.") That Ferrera left the draft agreement's salary provision blank and that his only communication with Mr. Carpionato regarding the issue of compensation (the May 15 memo) discussed a salary increase and other new incentives, belies his contention that the parties implicitly agreed to an annual salary of $90,000 for the duration of the contract. On the witness stand, Mr. Carpionato testified that he never spoke to Ferrera regarding his proposed salary increase. *Cf. MacKnight v. Pansey*, 122 R.I. 774, 412 A.2d 236, 242 (1980) (where defendant does not admit the existence of the contract, there is no substitute for complete compliance with the requirements of section 9–1–4). Ferrera did not dispute this point; he testified only that the figure of $90,000 was "acceptable" to him, and that the rest of his proposed compensation package was "gravy." We find such testimony insufficient to support the conclusion that the parties implicitly agreed to a compensation package.

Thus, without reaching the question of whether Mr. Carpionato signed the instant agreement (and without addressing the merits of the district court's conclusion that the parties failed as a matter of law to enter into a contract), we hold that Ferrera did not satisfy Rhode Island's statute of frauds.

### III.

Ferrera argues that the district court erred in dismissing his misrepresentation claim. In *Dudzik v. Leesona Corp.*, 473 A.2d 762, 766 (R.I.1984) the Supreme Court of Rhode Island stated that a plaintiff establishes a valid claim for misrepresentation when he demonstrates that (1) the defendant made a misrepresentation of fact; (2) the misrepresentation was "material," in that it would likely affect the conduct of a reasonable man with reference to a transaction with another person; and (3) by means of that material misrepresentation, the defendant induced the plaintiff to forgo a benefit to which he was legally entitled under a contract.

Ferrera argues that Mr. Carpionato made a misrepresentation of a material fact when he told Ferrera that he was going to sign the contract. Ferrera asserts that by means of this material misrepresentation, Mr. Carpionato induced Ferrera to continue to work for the company. He seeks severance pay and "damages for lack of notice for termination."

We find no merit in this argument. Even if Mr. Carpionato never signed the paper—causing his statement that he was going to sign the contract to be a misrepresentation of fact—the statement was not a "material" misrepresentation. As already noted, the purported contract lacked essential provisions relative to compensation. Thus even though signed, it would not have been legally binding and would not have entitled Ferrera to benefits specified therein. Accordingly, Ferrera cannot claim that a reasonable person would have believed that a contract existed and that his severance and notice benefits were intact. Ferrera's claim for damages based on misrepresentation must fail.

*The judgment against the plaintiff is therefore affirmed.*