# United States Court of Appeals
## For the First Circuit

No. 02-2618

FRED W. KOLLING, III,

Plaintiff, Appellant,

v.

AMERICAN POWER CONVERSION CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Lynch, Circuit Judge,

Arnold,* Senior Circuit Judge,

and Howard, Circuit Judge.

John J. McNaught, with whom McNaught, Cecere & McNaught, P.C. were on brief for appellant.
Adam P. Forman, with whom John T. McCarthy, Brian P. Pezza and Testa, Hurwitz & Thibeault, LLP were on brief for appellee.

October 16, 2003

* of the Eighth Circuit, sitting by designation

**HOWARD**, <u>Circuit Judge</u>.   Plaintiff-appellant Fred W. Kolling, III, challenges an adverse summary judgment ruling that American Power Conversion Corporation's ("APC") denial of his claim for employee benefits neither violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, nor breached a contractual obligation owed to him by APC.   We affirm.

## I.   Background

In November 1989, Kolling responded to APC's classified advertisement seeking candidates for the recently vacated Chief Financial Officer position ("CFO").   APC's Chief Executive Officer, Roger Dowdell, subsequently interviewed Kolling as part of APC's broader CFO search.   Although Dowdell did not address the specific compensation and benefits package Kolling might receive as CFO, he did discuss the benefits generally available to APC employees, such as the salary range, an employee stock ownership plan ("ESOP", "the Plan"), incentive stock options ("ISOs"), a medical plan, and health insurance.   At the close of the interview, Dowdell advised Kolling that he planned to continue his CFO search, but that APC had an immediate need for accounting services, which Kolling could provide on a consultancy basis for $50.00 an hour.   At that time, Dowdell advised Kolling that the parties "could see how it goes and . . . take it from there."

On November 25, 1989, Kolling began working for APC at its headquarters in Peace Dale, Rhode Island.   From the outset,

Kolling submitted weekly invoices in which he billed APC for "consulting services rendered." Kolling reported IRS form 1099 income, not IRS form W-2 wages, and was not on APC's payroll. After two months, Kolling agreed to have his compensation reduced to $35 dollars an hour. Dowdell explained that the cutback was consistent with the salary a CFO might receive. Meanwhile, APC conducted two additional searches for a CFO.

From 1989 to 1993, Kolling remained a consultant. During that time, he worked 40 to 80 hours a week for APC, performing general accounting functions such as SEC reporting and budget planning.[1] Kolling did not participate in APC's employee benefit or stock option plans but did obtain health insurance through APC on the condition that he, not APC, pay the premiums. Although Kolling persistently pressed the issue of his employment status, APC did not place him on its payroll until May 24, 1993, when he assumed the position of Director of Finance.[2] For purposes of vacation days and vesting under the ESOP, APC gave Kolling credit for his service as a consultant.

In July 1995, Kolling resigned from APC to accept another job. Four years later, in August 1999, Kolling submitted a claim for benefits seeking contributions under the ESOP for the three-

---

[1] Kolling's yearly consulting fees were $94,360, $119,245, and $120,540 in 1990, 1991 and 1992, respectively.

[2] Kolling received APC's full complement of benefits when APC placed him on its payroll.

and-a-half years he had consulted.  In October 1999, APC's Plan administrator wrote Kolling to advise him, inter alia, that he was not eligible to participate in the ESOP prior to May 1993.

In denying Kolling's claim, the administrator primarily relied on the fact that Kolling had not been an eligible APC employee when he had served as a consultant.  The Plan defined eligible employees as "Employees of the Employer" including "leased employees," but did not further define who was an "Employee of the Employer."  Consistent with APC's business practice, the administrator applied a "W-2 definition" to the term "employee."  Under this definition, only individuals paid on an IRS form W-2 basis were eligible to receive ESOP contributions.  Accordingly, the administrator denied Kolling's claim.

Kolling appealed, but the Plan administrator stood by his decision that, from 1989 to 1993, Kolling was ineligible for ESOP contributions because he was not paid on a W-2 basis.  In due course, Kolling brought this action alleging common law breach of contract and intentional misrepresentation.  He subsequently amended his complaint to allege a claim for benefits under ERISA, 29 U.S.C. § 1132(b).  At the close of discovery, APC moved for summary judgment.  The court granted the motion, reasoning that the Plan administrator had not acted arbitrarily and capriciously in denying Kolling ESOP benefits, and that the arrangement between Kolling and APC was too indefinite to constitute a formal

-4-

employment contract under Rhode Island law.  Kolling appeals these rulings.[3]

## II.  **Standard of Review**

Because the Plan reserves interpretive discretion to its administrator,[4] judicial review of the eligibility determination is limited to ascertaining whether the administrator acted arbitrarily and capriciously.  See, e.g., Lopes v. Metro. Life Ins. Co., 332 F.3d 1, 4-5 (1st Cir. 2003); Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003).[5]  We review de novo whether the district court correctly concluded that APC was entitled to summary judgment under the applicable standard of review.  See Pari-Fasano, 230 F.3d at 418-19.  We review the district court's decision granting summary judgment on the breach of contract claim de novo.  See Thomas v. Metro. Life Ins. Co., 40 F.3d 50, 508 (1st Cir. 1994).

---

[3] The district court also granted summary judgment on Kolling's intentional misrepresentation claim.  Kolling does not pursue that claim on appeal.

[4] The relevant provision of the Plan states that the Plan administrator

> shall determine any questions arising in the administration, interpretation and application of the Plan,. . . and the decision of the Administrator shall be conclusive and binding on all persons.

[5] Kolling contends that our review should be less deferential because the Plan administrator allegedly labored under a conflict of interest.  Circuit precedent precludes this argument.  See, e.g., Lopes, 332 F.3d at 5; Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 418-19 (1st Cir. 2000).

### III. **Analysis**

A. ERISA Claim

Kolling first argues that the Plan administrator acted unreasonably when he relied on a definition of employee which defined employee to include anyone who received an IRS form W-2 rather than anyone who met the common law definition of employee. In Kolling's view, APC's endorsement of the administrator's interpretation would lead to mischief because an employer could, with impunity, misclassify a worker for its own financial benefit. Kolling asserts that the facts presented to the administrator during the appeals process, and later to the district court, demonstrate that he was APC's employee even though he was not on its payroll.[6]

Relying on Renda v. Adam Meldrum & Anderson Co., 806 F. Supp. 1071, 1081 (W.D.N.Y. 1992), Kolling claims that because he qualified as a common law employee he was entitled to benefits under the ESOP. We disagree. So long as a plan does not discriminate based on age or length of service, nothing in ERISA

---

[6] Kolling also argues that the district court erroneously ignored the report and deposition testimony of his expert, Helen Marmoll. According to Kolling, Marmoll's testimony casts doubt on APC's classification of Kolling as an independent contractor. But this evidence was not before the Plan administrator at the time of his decision. Except for certain sorts of claims, such as a claim of corruption (not presented here), there is a strong presumption that judicial review is limited to the evidentiary record presented to the administrator. See Liston, 330 F.3d at 23-24. Kolling has not presented any basis for disregarding the presumption here.

requires a plan to extend benefits to every common law employee. See Bauer v. Summit Bancorp, 325 F.3d 155, 164 n.19 (3d Cir. 2003)(rejecting Renda's logic); Abraham v. Exxon Corp., 85 F.3d 1126, 1130-31 (5th Cir. 1996)(same); see also, Hensley v. Northwest Permanente P.C. Ret. Plan & Trust, 258 F.3d 986, 1000-02 (9th Cir. 2001) (ERISA plan is not required to cover all common law employees); Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1439 (7th Cir. 1996) (same).

Kolling may have a plausible argument that he was a common law employee of APC, but it is the language of the Plan, not common law status, that controls. Where, as here, the Plan adopts a circular definition of employee -- "Employee of the Employer" -- the Plan administrator has the discretion reasonably to determine the meaning of that phrase. See Trombetta, 102 F.3d at 1439-40 ("The phrase 'employed by an Employer' as used in the plan contains a defined term, and [the administrator] is free to define the terms in its plan however it wishes.").

According to the administrator, APC intended that only individuals who received W-2 forms and "leased employees" participate in the ESOP.[7] The administrator permissibly looked to APC's intention in defining the Plan's scope, see Hensley, 258 F.3d at 1002 (noting that it was reasonable for the plan

---

[7] A leased employee is an individual who performed services for APC as a result of a contract between APC and a third party.

administrator to adopt a definition of employee that carried out the plan's objectives), and the evidence supports the administrator's determination regarding APC's intention. APC has consistently declined to extend ESOP benefits to other individuals who did not receive W-2 forms and were not leased employees. See Bauer, 325 F.3d at 164 (finding persuasive the fact that the plan consistently excluded certain classes of individuals for benefits).

Within limits, ERISA affords employers broad discretion to limit participation in their employee benefit plans -- even where such an exclusion affects common law employees. See, e.g., Wolf v. Coca-Cola Co., 200 F.3d 1337, 1340 (11th Cir. 2000) (noting that "companies are not required by ERISA to make their ERISA plans available to all common law employees"); Bronk v. Mountain States Tel. & Tel., Inc., 140 F.3d 1335, 1338 (10th Cir. 1998) (noting that "an employer need not include in its [ERISA] plan all employees who meet the test of common law employees"). Here, the administrator reasonably determined that APC intended not to offer Plan benefits to persons in Kolling's situation. No more is required to comply with the statutory mandate.[8]

---

[8] Kolling makes a blanket allegation that the Plan administrator did not consider the information he presented as part of his administrative appeal. In the letter denying Kolling's appeal, however, the administrator stated that he had considered Kolling's submissions as well as his testimony during the hearing. Kolling presents us with no basis to question this statement.

B. Breach of Contract Claim

Kolling's second contention is that statements made to him by APC representatives established an employment contract between the parties. Kolling claims that, as a result of this supposed employment agreement, APC owes him several forms of compensation that were available to APC employees.[9] The district court held that Kolling and APC had not entered into an employment agreement. While acknowledging that Kolling had entered into an agreement with APC to provide consulting services in November 1989, the court concluded that APC's representations to Kolling, beginning from his initial interview in November 1989 and continuing until he assumed the position of APC's Director of Finance in May 1993, were too indefinite to establish an employment contract. We agree with the court's analysis.

Because both parties assert that their contract dispute is governed by Rhode Island law, we will apply that state's law in analyzing Kolling's claim. See Merchs. Ins. Co. of N.H., Inc. v. USF&G Co., 143 F.3d 5, 8 (1st Cir. 1998). In Rhode Island, "the long-recognized essential elements of a contract are competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." R.I. Five v. Med. Assocs.

---

[9] Kolling claims entitlement to incentive stock options, FICA contributions, bonuses, vacation pay, educational pay, and sick pay.

of Bristol County, 668 A.2d 1250, 1253 (R.I. 1996) (internal quotations omitted). For a contract to be binding, the parties must have settled on the essential terms of the agreement. See Ross-Simons of Warwick v. Baccarat, Inc., 182 F.R.D. 386, 395 (D.R.I. 1998) ("A court asked to declare a contract binding must determine that the contract is definite enough that the court can be 'reasonably certain' of the scope of each party's duties.") (quoting Downtown Inv. Ass'n v. Boston Metro. Bldgs., Inc., 81 F.2d 314, 319 (1st Cir. 1936)). For an employment contract, "the essential terms . . . include expressions of definiteness or certainty as to the parties to be bound by the contract, the compensation paid and the nature and extent of service to be performed." Lopez v. Personnel Appeal Bd., No. 99-41551, 2002 WL 393847, at *6 (R.I. Super. Ct. Mar. 4, 2002)(internal quotations omitted); see Ferrera v. Carpionato Corp., 895 F.2d 818, 822 (1st Cir. 1990) (applying Rhode Island law, identifying essential elements of employment contract).

To support his claim, Kolling identifies several representations made by Dowdell, including statements that (1) Dowdell would make a decision on Kolling's employment status in a few more interviews; (2) he would discuss employment with Kolling "in a week or two"; (3) he would discuss permanent employment with Kolling "tomorrow, not right now"; and (4) he "would see how [the consulting work went] and at that point . . . [would] make it

-10-

permanent." To be sure, Dowdell's statements likely encouraged Kolling to believe that, at some future time, APC would offer him employment. However, whether taken individually or cumulatively, these statements are too indefinite to establish an employment contract under Rhode Island law.

None of Dowdell's representations bound APC to employ Kolling. The statements merely pushed the time of decision on Kolling's employment prospects to some future date. See Smith v. Boyd, 553 A.2d 131, 133 (R.I. 1989) ("in order for an offer . . . to occur, the party must manifest an objective intent to . . . be bound"). In addition, Kolling and APC never agreed on a compensation package, an essential term of an employment contract. See Ferrera, 895 F.2d at 822. At Kolling's initial interview for the CFO position, Dowdell and Kolling discussed compensation for the CFO position generally. They did not agree on a specific compensation package for Kolling then or during the subsequent period that Kolling served as a consultant. Indeed, they only agreed on compensation when APC finally asked Kolling to assume the position of Director of Finance in May 1993, which is after the period for which he is now claiming benefits. Because the parties did not agree on the essential elements of an employment contract (i.e., that both parties agreed to be bound by the agreement and the compensation terms) prior to Kolling assuming the Director of Finance position, APC's previous statements regarding Kolling's

future employment prospects failed to establish a binding employment agreement.

C.    Common Law Employee Claim

Kolling asserts a final theory for relief. He claims that regardless whether APC's representations established an employment contract, his actual relationship with APC qualified him as a common law employee, which entitled him to employee benefits. The district court declined to consider this claim and so do we.

In his initial complaint, Kolling pled this "common law employee claim." However, this claim is conspicuously absent from Kolling's amended complaint. Kolling's breach of contract claim in the amended complaint is premised solely upon APC violating its "continuous representations" of employment. Kolling's amended complaint completely supersedes his original complaint, and thus the original complaint no longer performs any function in the case. See Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case."). By omitting "the common law employee claim" from the amended complaint, Kolling abandoned it. See Cicchetti v. Lucey, 514 F.2d 362, 365 n.5 (1st Cir. 1975); see also, Carver v. Condie, 169 F.3d 469, 472 (7th Cir. 1999) (holding

that allegations not included in amended complaint "fell by the wayside").[10]

Kolling seeks to avoid this waiver problem by arguing that he included "the common law employee claim" in his amended complaint by referencing facts and attaching documents, which suggest his common law employee status. Nowhere in Kolling's amended complaint did he clearly explain that these facts were intended to comprise a theory of recovery separate from the specified counts. While Kolling could have raised an additional claim by reference, see Fed. R. Civ. P. 10(c), he was required to plead the claim with sufficient specificity that APC could have recognized that an additional claim had been asserted against it. See 5 Wright & Miller, Federal Practice & Procedure § 1326 ("references to prior allegations must be direct and explicit in order to enable the responding party to ascertain the nature and extent of the incorporation"). Kolling did not do so.

---

[10] We note that this is not a case in which the district court dismissed, as a matter of law, Kolling's "common law employee claim" from the original complaint, which would have made the waiver issue much more difficult. Compare Marx v. Loral Corp., 87 F.3d 1049, 1055 (9th Cir. 1996) (holding that party waived right to appeal where district court dismissed claim from original complaint and party failed to re-plead dismissed claim in amended complaint) with Davis v. TXO Prod. Corp., 929 F.2d 1515, 1517-18 (10th Cir. 1991) (holding that party could pursue appeal where district court dismissed claim in original complaint and defendant failed to re-plead claim in amended complaint because requiring party to re-plead claim that district court had already dismissed is too "formalistic").

**Affirmed**.