Harrison v. Unum Life Ins.          CV-04-21-PB     04/11/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Francie E. Harrison

    v.                                    Civil No. 04-21-B
                                        Opinion No. 2005 DNH 063

Unum Life Insurance Company of America

MEMORANDUM AND ORDER

Francie E. Harrison brings this action against Unum Life Insurance Company of America ("Unum") claiming that its refusal to grant her long-term disability benefits violates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C § 1132(a)(1)(B). The parties have filed cross-motions for summary judgment. For the reasons set forth below, I grant Unum's motion and deny Harrison's motion.

I.  BACKGROUND

On November 23, 2001, Francie Harrison was injured in a motor vehicle accident. The accident resulted in severe head trauma, which Harrison alleges has rendered her totally disabled.

Because her blood alcohol levels exceeded the legal limit when she was admitted to Cheshire Medical Center, Harrison was charged with and ultimately convicted of driving while intoxicated ("DWI") under N.H. Rev. Stat. Ann. § 265:82. She was a first-time offender.

Prior to the accident, Harrison had purchased a long-term disability benefits policy from Unum. In a section entitled, **"WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN,"** the policy states that "[y]our plan does not cover any disabilities caused by, contributed to, or resulting from your. . . commission of a crime for which you have been convicted under state or federal law."

On November 27, 2001, Harrison's employer submitted claims for long-term disability benefits on Harrison's behalf. While reviewing Harrison's long-term disability claim, Unum learned of Harrison's DWI conviction. In a letter dated July 10, 2002, it informed her that:

> We received copies of court documents from Cheshire Keene District Court in Keene, NH, indicating that you were convicted of driving while intoxicated at the time of your motor vehicle accident on November 24, 2001. Since your injuries happened as a result of this accident, we are unable to approve benefits as indicated by the policy above.

Harrison appealed the adverse ruling on her disability claim on September 2, 2002. She argued that a New Hampshire driver convicted of DWI for the first time is deemed only to have committed a "violation," and that under New Hampshire law "[a] violation does not constitute a crime and conviction of a violation shall not give rise to any disability or legal disadvantage based on a conviction of a criminal offense." N.H. Rev. Stat. Ann. § 625:9 (emphasis added). Viewing "crimes" and "violations" as distinct, she argued that Unum erred in concluding that her injuries were "caused" by a "crime," and thus that she was disqualified from receiving benefits.

In a letter dated September 19, 2002, Unum denied Harrison's appeal, explaining that it was justified in doing so because it had adopted the Webster's Dictionary definition of the word "crime" to define the policy's scope. Unum claimed that Webster's defines a "crime" as "an act committed or omitted in violation of a law."[1] DWI qualifies as a "crime" under this

---

[1] Harrison does not dispute that Webster's defines "crime" in this manner, though neither party cites to a particular edition for the proposition. Citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, however, the New Hampshire Supreme Court has affirmed that "Webster's defines 'crime' broadly enough to embrace'" a "violation" under New Hampshire law. State v. Woods, 139 N.H.

definition.

Unum further argued that its interpretation must be respected "[r]egardless of the State of New Hampshire's classification of the act," because it is reasonable to rely on a dictionary when interpreting terms in an insurance policy. Harrison disagrees and asks that Unum's decision be reversed. I consider her arguments below.

## II. <u>STANDARD OF REVIEW</u>

The threshold question presented by this case is whether Unum's denial of Harrison's claim should be reviewed *de novo* or under the familiar "abuse of discretion" standard. In <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), the United States Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under the *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Id.</u> at 115. This requirement has been given teeth by the First Circuit, which

399, 400 (1995).

mandates the use of the *de novo* standard unless the plan "clearly grant[s] discretionary authority to the administrator." Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (quoting Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 583 (1st Cir. 1993)) (emphasis added).

Harrison does not dispute that Unum's policy purports to grant it discretionary authority. Indeed she is in no position to argue otherwise because the section of the policy entitled **"CERTIFICATE SECTION,"** explicitly gives Unum "discretionary authority. . . to determine. . . eligibility for benefits and to interpret the terms and provisions of the policy." Nevertheless, Harrison argues that I must review the case *de novo* in spite of this provision because Unum operated under a conflict of interest.

Harrison is correct that a court "'may cede a diminished degree of deference--or no deference at all--to the administrator's determinations'" upon proof of a conflict of interest. Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan, et. al., 2005 U.S. App. Lexis 4855, *13 (1st Cir. March 25, 2005) (quoting Leahy v. Raytheon, Co., 315 F.3d 11, 16 (1st Cir. 2002)). "To affect the standard of review, however, a conflict

-5-

of interest must be real.  A chimerical, imagined, or conjectural conflict will not strip the fiduciary's determination of the deference that otherwise would be due."  Leahy, 315 F.3d at 16 (citing Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998)).

Harrison argues that Unum has a conflict based on its dual status as payor and administrator of the policy's benefits.  This argument has been explicitly rejected by the First Circuit.  See Wright, 2005 U.S. App. Lexis at *15 (concluding that the district court "properly declined to apply a less deferential standard due to the alleged structural conflict").  According to Wright, "'the fact that [] the plan administrator [] will have to pay [the plaintiff's] claim [] out of its own assets does not change [the arbitrary and capricious] standard of review."  Id. at *15 (quoting Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 125-26 (1st Cir. 2004)).  Harrison's claim that Unum operated under a conflict of interest is therefore rejected.

Unum's decision to classify a first-time DWI conviction as a "crime" shall thus be reviewed under the abuse of discretion standard.  This standard of review requires the court to ask "'whether the aggregate evidence, viewed in the light most

favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits.'" Wright, 2005 U.S. App. Lexis at *12 (quoting Twomey v. Delta Airlines Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003) (citation omitted)). A decision to deny benefits to a beneficiary will be upheld under this standard if the administrator's decision "was reasoned and supported by substantial evidence." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004).

## III. **DISCUSSION**

The question thus presented is whether Unum's definition of the term "crime" is "reasoned" and "supported by substantial evidence." See Gannon, 360 F.3d at 213. Harrison argues that it is not. She claims that any interpretation that departs from the definition provided in the New Hampshire code is per se unreasonable. Under the code's definition, she claims that she was convicted only of a "violation," and not, as Unum argues, of a "crime."[2]

---

[2] As Unum notes, the strength of the distinction Harrison seeks to draw between "violations" and "crimes" under New

-7-

The issue in this case, however, is not what the word "crime" means in the context of the code. Rather, the question is what the word means in the context of Unum's long-term disability policy. As at least two appellate courts have made clear, it is perfectly permissible for a policy administrator to adopt a definition that is different from a definition adopted by the state if that definition is reasoned and supported by substantial evidence. See Kolling v. American Power Conversion Corp, 347 F.3d 11, 14 (1st Cir. 2003) (holding that a plan administrator has the right to reasonably determine the definition of a plan phrase, even if that phrase contradicts the state common law definition); see also Sisters of the Third Order v. Swedishamerican Grp. Hlt. Ben., 901 F.2d 1369, 1372 (7th Cir. 1990) (stating that "ERISA preempts state law and lets a health and welfare plan draft its own rules").

Hampshire law was at least diluted by the New Hampshire Supreme Court in Woods. There, in determining whether a defendant could be required to pay restitution to the victim of an offense, the Court concluded that a "violation" was indeed a "crime" under the relevant statute. 139 N.H. at 400-02. I find for Unum on grounds unrelated to the Woods decision. I therefore see no reason to further explore the implications of Woods here.

Unum has done so here.  Rather than rely on any state law definition, Unum's construction relies on a definition of the word "crime" that is provided by Webster's Dictionary.  Harrison argues that this approach constitutes reversible error.  For the following reasons, I disagree.

First, Unum's approach adheres to established contract interpretation principles.  The normal rule is that contract language in an ERISA action is to be given its plain meaning.  See Rodriquez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 586 (1st Cir. 1993) (citation omitted).  "Dictionaries of the English language are a fundamental tool in ascertaining. . . plain meaning."  United States v. Lachman, 387 F.3d 42, 51 (1st Cir. 2004); Levinsky's, Inc. v. Walmart Stores, 127 F.3d 122, 129 (1st Cir. 1997) (stating that "we start, as we often do in searching out the meaning of a word, with the dictionary"); see also Woods, 139 N.H. at 400 (relying, in part, on Webster's Dictionary for a definition of the word "crime").  Indeed, in Littlefield v. Arcadia Insurance Co., 392 F.3d 1 (1st Cir. 2004), the court relied on an American Heritage Dictionary definition of the word "crime" to affirm the defendant's decision to exclude a plaintiff from coverage under its policy.  Id. at 8.  There,

"crime" was defined as "[a]n act committed or omitted in violation of a law forbidding or commanding it and for which punishment is imposed upon conviction." That Unum has relied on a similar dictionary definition to interpret the scope of the policy's criminal act's exclusion thus appears to be both well-reasoned and supported by substantial, legitimate evidence.[3]

Second, Unum's interpretation promotes consistency among similarly situated policy holders. See 29 C.F.R. § 2560.503-1(b)(5) (encouraging plan administrators to ensure that plan provisions are "applied consistently with respect to similarly situated claimants"). Because it draws its definition from one interpretive source, all policy holders are bound by Unum's definition. This would not be true if, as Harrison argues, the applicability of the criminal act's exclusion were to depend upon the way in which DWI is classified under the law of each state

---

[3] That DWI is treated as a "crime" under New Hampshire law in other contexts, see N.H. Rev. Ann. Stat. 265:82 (classifying a second DWI offense as a "misdemeanor" requiring a "minimum sentence of 10 days") and that DWI is considered a "crime" in other states, see, e.g. Mass. Gen. Laws ch. 90, § 24 (2005) (Massachusetts statute categorizing a first DWI offense as a misdemeanor), lends support to Unum's determination that DWI is a "crime." It remains to be seen whether Unum's broad definition of "crime" would withstand scrutiny in a case where the underlying offense at issue lacks a similar penological pedigree.

where the DWI occurred.  Under such a regime, similarly situated claimants would receive different treatment depending upon the state in which the "crime" was committed.  Compare N.H. Rev. Stat. Ann. § 265:82 (classifying DWI as a violation) with Mass. Gen. Laws Ann. ch. 90 § 24 (2005) (classifying DWI as a misdemeanor).

Third, Unum's interpretation effectuates, rather than undermines the criminal act exclusion's underlying purpose.  The exclusion exists to prevent claimants from passing the costs of illegal behavior on to other policy holders.  Cf. Sisters of the Third Order, 901 F.2d at 1372 (stating that "[i]njuries arising out of the combination of liquor and motor cars are self-inflicted, and a health insurance plan . . . need not draw down the assets contributed by the provident many to shift the cost of self-destructive behavior").  Harrison's interpretation would have the opposite effect.  I reject this construction.

Given the degree of deference normally accorded plan administrators in the interpretation of their own plans, these reasons provide an adequate basis for affirming Unum's interpretation.  I thus hold that Unum's interpretation of the word "crime" is reasoned and supported by substantial evidence.

-11-

Unum therefore justifiably excluded Harrison from coverage under its long-term disability benefits policy.

## III.  CONCLUSION

For the foregoing reasons, I deny Harrison's motion for summary judgment (Doc. No. 6) and grant Unum's motion for summary judgment (Doc. No. 7).  The clerk is instructed to enter judgment accordingly.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

April 11, 2005

cc:  Byrne J. Decker, Esq.
     Francis G. Murphy, Jr., Esq.