**Richard J. TRIFIRO,**
**Plaintiff, Appellant,**

**v.**

**NEW YORK LIFE INSURANCE CO.,**
**Defendant, Appellee.**

No. 87–1815.

United States Court of Appeals,
First Circuit.

Heard Feb. 3, 1988.
Decided April 26, 1988.

James F. Freeley, Jr., Boston, Mass., for plaintiff, appellant.

Joseph F. Ryan with whom Lyne, Woodworth & Evarts, Boston, Mass., was on brief, for defendant, appellee.

Before BREYER, Circuit Judge, ALDRICH, Senior Circuit Judge, and PETTINE,[*] Senior District Judge.

PETTINE, Senior District Judge.

The present appeal from a judgment of the United States District Court for the District of Massachusetts sounds in contract and tort. In the court below, appellant brought claims for breach of contract, deceit, negligent misrepresentation, a violation of Mass.G.L. c. 93A and promissory estoppel. Appellee won a summary judgment on all counts and appellant appealed.

### The Formation of a Contract

If the laws of contract were formalized as a deductive system, one of its most basic axioms would be that the formation of a contract requires the manifestation of mutual assent by the parties to the agreement. *See* Restatement, Second, Contracts § 17. This requisite manifestation may be evinced in two ways. The first and most traditional method involves an offer by one of the parties and an acceptance of that offer by the other. Of more recent origin is the second method, the doctrine of promissory estoppel. An offspring of the intermarriage of tort and contract, this doctrine holds that a promise given without consideration is binding when the promissor should reasonably expect to induce action or forbearance if injustice can be avoided only by enforcement of the promise. Compare *id* at § 90 with Restatement, Second, Torts §§ 872, 894. The latter method will be discussed in the next section; the former is discussed here.

From the undisputed facts of the case, one can discern six exchanges that are candidates for the offer and acceptance

---

[*] Of the District of Rhode Island, sitting by designation.

necessary to the formation of a contract under the first method:

*Exchange 1.* On May 28, 1986, Wolfson, an agent for petitioner, sent a letter to Newman, an officer of respondent, offering to purchase ten properties owned by respondent. On June 4, 1986, Newman replied to Wolfson by letter, informing him that the offer was unacceptable.

*Exchange 2.* The letter of June 4, 1986, also set forth the prices respondent was asking for these properties. Wolfson responded by submitting a counteroffer for nine of the properties on behalf of petitioner at prices most of which were below the prices requested by respondent.

*Exchange 3.* Having received the new offer by petitioner, Newman informed Wolfson that this offer was also unacceptable.

*Exchange 4.* On June 10, 1986 Wolfson forwarded to respondent a letter from petitioner in which petitioner expressed an interest in purchasing seven properties. Enclosed with the letter was a check for $150,000.00 to be used as a deposit subject to, *inter alia,* his visual inspection and approval of the properties as well as "a mutually satisfactory purchase and sale agreement and good and sufficient deeds, conveying good and clear record and marketable title." Record Appendix, 391. Petitioner's letter also provided lines for a signature and a date indicating acceptance of the letter's terms, while Wolfson's cover letter requested that the letter be signed and returned. Respondent did neither. Instead, respondent sent the letter described in the next exchange.

*Exchange 5.* Responding to petitioner's letter of June 10, 1986, respondent informed petitioner by a letter dated June 12, 1986, that once he confirmed his offer respondent would be willing to consider it, noting that if the offer is rejected, petitioner's deposit would be returned. Petitioner returned a copy of this letter with his signature indicating his acceptance of its content. Petitioner subsequently made a new offer described in the next exchange.

*Exchange 6.* On June 25, 1986, petitioner sent a letter offering to purchase five properties at the prices requested by respondent. The letter also notes, *inter alia,* that if this offer is "not successful in gaining appropriate approval or conveyance of the property through no fault of the Purchaser, the deposit shall be returned." Record Appendix, 36. In a letter of July 11, 1986, respondent rejected petitioner's offer and returned his deposit.

 A consideration of the above exchanges clearly demonstrates that no contract arose from these negotiations. While exchanges 1, 3, and 6 all clearly involved an offer by petitioner, they all just as clearly involved a rejection of that offer by the respondent. Moreover, petitioner's letter in exchange 4 did not even constitute an offer but only an interest in making an offer. Nonetheless, even if one considers this letter an offer, respondent clearly did not accept it. Respondent neither signed nor returned this letter as requested by petitioner. Nor can respondent's next letter to petitioner be construed as the acceptance not given by signature and return of petitioner's letter. Therein, respondent expressly addressed what would happen to petitioner's deposit if his offer were rejected. Rather, respondent's letter to petitioner, forming the first part of exchange 5, constituted an invitation to offer or, more precisely, to confirm petitioner's current offer after he had viewed the properties. While clearly not an offer, even if respondent's letter were construed as an offer, still no contract was formed. Petitioner's reply to this letter, described as the first communication in exchange 6, presented a new offer; thereby terminating petitioner's power of acceptance. *See* Restatement, Second, Contracts § 39. Similarly, in exchange 2, if respondent's letter is construed as an offer, petitioner terminated his power of acceptance when he submitted his counteroffer for only nine of the properties at prices less than those requested by respondent. Accordingly, we concur with the court below that no contract was formed through the traditional method of offer and acceptance.

## Reasonable Reliance

The second method through which a contract may come into existence, the doctrine of promissory estoppel, may be considered together with petitioner's other claims. Promissory estoppel as well as deceit, negligent misrepresentation and a violation of Mass.G.L. c. 93A require reasonable reliance by the petitioner.[1] Accordingly, if petitioner's reliance is found unreasonable under the circumstances, all of these claims must fail.

Petitioner claims to have reasonably relied on a statement made by Newman to Wolfson. Sometime between June 5 and June 10, 1986, Newman and Wolfson had a conversation on the telephone. During this conversation Wolfson inquired about the procedure for purchasing properties from respondent. Newman informed Wolfson that it would be necessary to have any deal approved by a committee. Upon hearing this requirement, Wolfson expressed some concern and Newman assured Wolfson that this would be a small deal for respondent and that were petitioner to meet the prices requested by respondent, committee approval would be a mere formality. Record Appendix, 374–75. Wolfson then relayed this information to petitioner.

Two days to a week later, respondent sent a letter to petitioner in which respondent stated "[i]f and when you confirm your offer to acquire any or all properties listed in your letter of June 10 we will present your proposal to the appropriate authority or committee which shall at its sole discretion accept or reject your offer." Record Appendix, 33–34. This letter was signed by Newman. As if this explicit statement by Newman, that the approval of any proposal would be at the sole discre-

tion of the appropriate committee or authority, were not sufficient to render reliance on his earlier remark to Wolfson unreasonable, Newman also requested in his letter that petitioner "[p]lease acknowledge [his] understanding of the above [the requirement of committee approval] by signing and dating the enclosed copy of this letter to the undersigned by June 17, 1986." *Id.* at 34. Petitioner, moreover, signed and returned this letter as Newman requested. *Id.*

Notwithstanding Newman's express written statement to the contrary and petitioner's express written acknowledgement that he understood that an appropriate authority or committee would at its sole discretion accept or reject his offer, petitioner now asks us to hold that he acted reasonably in relying on the earlier oral statement made to a third party that committee approval would be a mere formality. This we cannot do. When a person acts in a way contrary to his own acknowledged understanding of the facts, his acts must be deemed unreasonable as a matter of law.

Moreover, even if we were to ignore petitioner's express written acknowledgement of this understanding, still his reliance must be deemed unreasonable. The conflicting content of Newman's oral statement with Newman's written statement (the conflict of the statement that approval was certain with the statement that it was uncertain) should have placed petitioner on notice that he should not rely on either statement. Confronted by such conflict a reasonable person investigates matters further; he receives assurances or clarification before relying. A reasonable person does not gamble with the law of the excluded middle, he suspends judgment until fur-

---

1. Strictly speaking, the Supreme Judicial Court of Massachusetts has held that to recover under Mass.G.L. c. 93A plaintiff must demonstrate only "a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *International Fidelity Insurance Co. v. Wilson,* 387 Mass. 841, 850, 443 N.E.2d 1308, 1314 (1983). Nonetheless, we note that two different kinds of causal nexus are possible. Although there are some causal chains, which exist apart from any reliance, there are other causal chains in which reliance forms an essential link. In this latter type of nexus, the reliance must be reasonable. Thus, while reasonable reliance is not absolutely necessary under c. 93A because some causal chains exist in which actual reliance plays no part, this statute is not so radical that it derogates from the traditional principles of tort and contract law that when actual reliance is present, it must be a reasonable reliance. As we deal here with a causal nexus in which actual reliance is present, the statement in the text is correct.

ther evidence is obtained. Explicit conflict engenders doubt, and to rely on a statement the veracity of which one should doubt is unreasonable. The law does not supply epistemological insurance. Nor does it countenance reliance on one of a pair of contradictories simply because it facilitates the achievement of one's goal. Similar reasoning stands behind the principle of tort law that "[t]he maker of a fraudulent misrepresentation is not liable to one who does not reply upon its truth but upon the expectation that the maker will be held liable in damages for its falsity." *See* Restatement, Second, Torts § 548.

▮ Accordingly, we hold that petitioner's reliance on Newman's earlier statement to Wolfson was unreasonable and that no contract was formed under the doctrine of promissory estoppel. *Pappas Industrial Parks, Inc. v. Psarros*, 24 Mass.App.Ct. 596, 511 N.E.2d 621 (1987). Moreover, because petitioner's other claims also require that his reliance be reasonable, his claims for deceit, negligent misrepresentation and a violation of Mass.G.L. c. 93A must also fail.

For the foregoing reasons, the judgment of the district court is AFFIRMED.