**MASSACHUSETTS LABORERS' HEALTH & WELFARE FUND, By and Through its Trustees, on Behalf of Itself and on Behalf of all Other Similarly Situated Health and Welfare Funds in the Commonwealth of Massachusetts, Plaintiff,**

v.

**PHILIP MORRIS, INC.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; B.A.T. Industries P.L.C.; Lorillard Tobacco Company; Liggett Group, Inc.; The Council for Tobacco Research—U.S.A., Inc.; The Tobacco Institute, Inc.; Hill & Knowlton, Inc., Defendants.**

No. Civ.A. 97–11552–GAO.

United States District Court, D. Massachusetts.

Aug. 4, 1999.

Robert J. Connerton, James S. Ray, Connerton, Ray & Simon, Washington, DC, Jerry Kristal, Weitz & Luxemberg, Cherry Hill, NJ, Robert J. Doyle, Carol R. Steinberg, Steinberg, Doyle, Boston, MA, for Massachusetts Laborers' Health and Welfare Fund, Plaintiff.

Henry C. Dinger, Kenneth J. Parsigian, Marshall Simonds, Goodwin, Procter & Hoar, Boston, MA, for Philip Morris Inc., Defendant.

Donald B. Ayer, Jones, Day, Reavis & Pogue, Washington, DC, Thomas E. Peisch, William P. Corbett, Jr., Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, Donald J. Wood, Connarton, Wood & Callahan, Boston, MA, for R.J. Reynolds Tobacco Co., Defendants.

John H. Henn, David R. Geiger, Foley, Hoag & Eliot, Boston, MA, Majorie Press Lindblom, Kirkland & Ellis, New York, NY, for Brown & Williamson Tobacco Corp., Defendant.

Frank C. Huntington, James S. Dittmar, Hutchins, Wheeler & Dittmar, Boston, MA, for B.A.T. Industries P.L.C., Defendant.

Gael Mahony, Richard M. Zielinski, Hill & Barlow, Boston, MA, Gay L. Tedder, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Co., Defendant.

Kelly L. Wilkins, Cornell & Gollub, Boston, MA, for Liggett Group, Inc., Defendant.

Steven Klugman, Debevoise & Plimpton, New York, NY, Thomas E. Peisch, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, for the Council for Tobacco, Research-U.S.A., Inc., Defendant.

Robert J. Muldoon, Jr, Sherin & Lodgen, Boston, MA, David A. Brown, Sherin & Lodgen LLP, Boston, MA, for the Tobacco Institute, Inc, Defendant.

David R. Geiger, Foley, Hoag & Eliot, Boston, MA, for Hill & Knowlton, Inc., Defendant.

Robert J. Doyle, Carol R. Steinberg, Steinberg, Doyle, Boston, MA, for William Zall & Sons, Sulgrave, Meridian Tobacco Co., George Melhado, Marks Wholesale, Inc., Garber Bros., Inc., City Cigarette, Jason Brudnick & Co., Inc., Auburn Merchandise Distributors, Defendants.

## OPINION

O'TOOLE, District Judge.

This opinion resolves three motions pending before the Court: the defendants' motion to dismiss the original complaint (Dkt. No. 20), the plaintiff's motion to amend the complaint (Dkt. No. 35), and the defendants' motion to dismiss the new counts added by the amended complaint (Dkt. No. 46). The Court concludes that the plaintiff has failed to set forth claims upon which relief can be granted, except to the extent that the claim for "Restitution to Prevent Unjust Enrichment" (Count VII in both the original and amended complaints) asserts a claim in the nature of subrogation for money paid to or on behalf of plan beneficiaries on account of injuries wrongfully caused by the defendants.

### Background

The plaintiff Massachusetts Laborers' Health & Welfare Fund (the "Fund"), an employee welfare benefit plan which provides comprehensive health care benefits to employees, retirees, and their dependents, commenced this action in the Massachusetts Superior Court on behalf of itself and all other similarly situated health and welfare funds in Massachusetts.[1] The complaint alleged that over a period of decades the named tobacco manufacturers, trade associations, and distributors together engaged in a conspiracy to conceal the harmful effects of smoking on health. As a result, many of the Fund's beneficiaries became ill from smoking, requiring the Fund to spend millions of dollars for its participants' health care expenses.

Both the original and amended complaints assert that the Fund's trustees "are bound by their fiduciary duties under the Employee Retirement Income Security Act ('ERISA'), 29 U.S.C. § 1001 *et seq.*, to ascertain the legal liability of third parties to pay for care and services available under the employee benefit plan[ ] paid out of the Fund[ ], and to seek reimbursement to the Health Welfare Fund[ ] to the extent of such legal liability." Compl. /Am.Compl. ¶ 7. Both the original and amended complaints describe the relief sought as follows:

> This is an action to recover funds expended by the Health and Welfare Fund to provide medical treatment to [its] participants and beneficiaries suffering from smoking-related illnesses and to seek appropriate injunctive relief against

1. Two observations about the form of the complaint are in order. First, the action is purportedly brought by the Fund itself as an entity, although the caption of the complaint says that the Fund is acting "by and through its Trustees." Ordinarily, under Massachusetts law, the proper plaintiff in a suit by a trust fund would be the trustee. *See* 9 Joseph R. Nolan, MASSACHUSETTS PRACTICE, Civil Practice § 158, at 208–09 (2d ed., 1992) ("[A]n ordinary trust ... is not a legal person or entity, and hence it may not, as such, sue or be sued..... In the ordinary trust, the trustee embodies the trust; he holds the legal title, and proceedings involving the trust should be brought by and against him."). Each of the claims asserted presumably could be brought formally by the trustees of the trust, however, so that what may be a formal defect need not stand in the way of a determination of the viability of the claims.

Second, the action is styled as a class action, and both the original and amended complaints set forth "class allegations" averring that the action satisfies the several conditions to the maintenance of class actions set forth in Fed.R.Civ.P. 23. No class has been certified, and the Court now does not resolve whether the requirements of Rule 23 are met. At this stage, there is only one party plaintiff, the named Massachusetts Laborers' Health & Welfare Fund. For consistency, in this opinion reference to the named plaintiff Fund will be substituted for the pleadings' references to plural funds.

the Defendants' continuing illegal and outrageous conduct. Among other things, [Plaintiff seeks] a permanent injunction to require the Defendants to disclose their research on smoking, addiction and health; to fund a remedial public education campaign on the health consequences of smoking; and to fund smoking cessation programs for nicotine-dependent smokers.

*See* Compl./Am.Compl. ¶ 6.

The defendants removed the action, and this Court denied the plaintiff's motion to remand after concluding that Count VII (captioned "Restitution to Prevent Unjust Enrichment"), properly characterized, seeks equitable relief through the enforcement of the subrogation provision of plaintiff's ERISA plan, thus giving rise to "federal question" jurisdiction under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. *See Mass. Laborers' Health & Welfare Fund v. Phillip Morris,* 62 F.Supp.2d 236 (D.Mass. 1998).

In addition, two defendants, New England Wholesale Tobacco Co., Inc. and Albert H. Notini & Sons, Inc., moved to be dismissed from the action described in the original complaint on the ground that they had been fraudulently joined solely to defeat federal diversity jurisdiction. In the same opinion, the Court granted their motion, and with the dismissal of the only nondiverse defendants, "diversity" jurisdiction existed under 28 U.S.C. § 1332 as well.

Before the remand issue was resolved, the defendants also moved to dismiss the original complaint for failure to state a claim. In addition to opposing the motion, the plaintiff moved to amend the complaint. The parties disagree whether the plaintiff's motion for leave to amend is necessary or whether the plaintiff has a right to amend without leave of the court. *See* Fed.R.Civ.P. 15(a). This issue need not be decided because, assuming it is needed, leave is granted. Perhaps anticipating that the amendment would be allowed, the defendants supplemented their motion to dismiss the original complaint with a motion to dismiss the new counts added by the amendment. To simplify matters, the two motions to dismiss will hereafter be addressed as one.

The original complaint set forth seven counts, alleging claims for fraud and misrepresentation, violation of Mass.Gen.Laws ch. 93A, civil conspiracy, intentional and negligent breach of a special duty, and, as noted, restitution to prevent unjust enrichment. The amended complaint deleted one of the fraud counts and substituted a count for negligent misrepresentation. It also added a new count for breach of warranty.[2]

### Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), "a court must take all well-pleaded facts as true, but it need not credit a complaint's 'bald assertions' or legal conclusions." *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir.1996), *citing Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993) and *United States v. AVX Corp.,* 962 F.2d 108, 115 (1st Cir.1992). Conclusions that are not supported by the facts that are alleged in the complaint "deserve no deference." *AVX,* 962 F.2d at 115. More particularly, summary legal conclusions that are contradicted or "belied by the facts alleged" may be disregarded. *In re Lane,* 937 F.2d 694, 698 n. 7 (1st Cir.

2. The amended complaint also named as new defendants nine distributors of cigarettes in addition to the two named in the original complaint. At the time the motion to amend was filed, the Court had not yet dismissed the two originally named distributor defendants for fraudulent joinder and they are included in the amended complaint. The effect of allowing the amendment is to restore those two defendants to the case, along with the nine additional distributor defendants named for the first time, subject, of course, to all other defenses and objections that are raised to the claims against the distributors. The defendants do not renew their fraudulent joinder objection with respect to the amended complaint.

1991), *citing Kadar Corp. v. Milbury*, 549 F.2d 230, 235 (1st Cir.1977).

For some reason, notwithstanding the complaint's description of the action as one "to recover funds expended . . . to provide medical treatment to . . . participants and beneficiaries suffering from smoking-related illnesses" brought because of the fiduciary duty imposed on the Fund's trustees under ERISA "to ascertain the legal liability of third parties to pay for care and services available under the employee benefit [plan] paid for out of the [Fund], and to seek reimbursement . . . to the extent of such legal liability," *see* Am.Compl. ¶¶ 6, 7, the plaintiff has steadfastly insisted that the causes of action are brought on behalf of the Fund itself to redress direct injury to the Fund, and that the claims are not those of beneficiaries or participants injured by the defendants' wrongs, asserted by reason of the Fund's contractual subrogation rights. *See, e.g.*, Pl.'s Mem., at 5 (Dkt. No. 70) ("[P]laintiff does not seek to recover for tobacco-related personal injuries suffered by Fund participants; rather, plaintiff's claims are for economic injuries they [*sic*] and the proposed class [of similar funds] have suffered as a direct result of defendants' fraudulent conduct.").

■ For the question of subject matter jurisdiction raised by the plaintiff's motion to remand, the Court refused to accept that characterization as to the "restitution" count, but rather, for the reasons stated in the Court's memorandum, recharacterized that count as one seeking to enforce the Fund's subrogation rights. Generally, a court may not recast the plaintiff's claims, but it may be necessary, in order to determine if the court has subject matter jurisdiction of a case, to consider whether a claim that purports to be brought under state law is "necessarily federal" and, if need be, "recharacterize" the claim to reflect its true, federal character. *See BIW*

*Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of Am.*, 132 F.3d 824, 831–32 (1st Cir.1997). Despite the plaintiff's continuing protest, the Court adheres to its prior opinion. Moreover, the Court is satisfied that Count VII of the amended complaint, properly recharacterized, states a claim sufficient to withstand the defendants' motion to dismiss, and their motion is therefore denied as to Count VII, construed as a claim for enforcement of subrogation rights under the plan.

Except for the purpose of determining subject matter jurisdiction, however, the Court must defer to the plaintiff's own characterization of its claims. Such deference is appropriate when the issues under consideration arise, as here, upon a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Accordingly, for purposes of the present motion to dismiss, the Court will consider claims, except for Count VII, as the plaintiff describes them—that is, as claims brought for wrongs done directly to the Fund, rather than to its participants or their beneficiaries.

### Analysis

Each of plaintiff's counts, understood as a claim by the Fund on its own behalf rather than a claim in subrogation to the rights of plan beneficiaries, is defective and must be dismissed.

### Counts I, II and III

■ Counts I through III of the amended complaint plead injury resulting from the defendants' fraud (Count I), negligent misrepresentation (Count II), and unfair and deceptive trade practices (Count III). The gist of these claims is that the Fund was damaged by its reliance on the defendants' public representations that their tobacco products were not harmful.[3] The plaintiff cannot prevail on any of

---

3. Under Massachusetts law, reliance is an element of claims for fraud and for negligent misrepresentation. *See Nei v. Burley*, 388 Mass. 307, 446 N.E.2d 674, 677 (1983) (fraud); *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 429 N.E.2d 1129, 1134 (1982) (negligent misrepresentation). To prove a violation of Chapter 93A based on deception, the plain-

these claims unless it can prove that its reliance on the allegedly false statements was *reasonable*. *Saxon Theatre Corp. v. Sage,* 347 Mass. 662, 200 N.E.2d 241, 244–45 (1964). *See also Trifiro v. New York Life Ins. Co.,* 845 F.2d 30, 33 n. 1 (1st Cir.1988). Whether reliance is reasonable is ordinarily a question of fact for a jury. However, if, on the facts alleged in the complaint, no reasonable jury could find that the plaintiff's reliance was reasonable, the defendants are entitled to judgment as a matter of law. *Saxon Theatre,* 200 N.E.2d at 244–45.

■ The plaintiff has alleged in broad terms that it relied on the defendants' false representations about the safety of tobacco products and as a result delayed or failed to take measures to discourage plan beneficiaries from using tobacco products. Yet the facts pleaded in the amended complaint demonstrate that any reliance by the plaintiff could not have been reasonable as a matter of law.

The plaintiff acknowledges that the defendants were not the only actors publicizing information about smoking and health. According to the amended complaint, starting in the 1950s and continuing to the present, the results of research linking smoking to cancer, emphysema, and other health problems have been well publicized. *See* Am.Compl. ¶ 80 (alleging that publication in 1952 of an article in the Journal of the American Medical Association ("JAMA") on smoking and bronchial carcinoma led JAMA to refuse cigarette advertising); *id.* ¶ 82 (alleging that cigarette industry conspiracy began when manufacturers were confronted with the publication of several scientific studies warning of the health hazards of smoking); *id.* ¶ 87 (noting that in 1964 the Surgeon General of the United States "issued his first report linking cigarette smoking to lung cancer"). *See also id.* ¶ 109 (alleging that in 1984, R.J. Reynolds placed an advertise-

ment in the *New York Times* challenging "[s]tudies which conclude that smoking causes disease"). Indeed, as the last example shows, many of the plaintiff's allegations indicate that the information disseminated by the defendants was intended as a *response* to research already available to the public that indicated smoking was dangerous. *See, e.g.,* Am.Compl. ¶ 82 ("The cigarette industry responded quickly to the mounting adverse publicity of a link between smoking and cancer."); *id.* ¶¶ 214, 215 (alleging that Philip Morris "responded" to statements by former employees that the company manipulated nicotine levels by publishing misleading advertisements).

Nonetheless, the plaintiff insists that despite the availability in the public domain of conflicting evidence and warnings—not to mention lively public debate—about the effects of cigarette smoking on health, a jury could permissibly find that it was reasonable for a health and welfare benefit fund to rely exclusively on the reports produced or sponsored by the tobacco industry about the safety of its products in deciding whether or not to discourage smoking by plan beneficiaries.

Significantly, the plaintiff does not allege it relied on misrepresentations that were made to it individually or privately, alleging instead misrepresentations carried to the public by mass media. As shown above, those same channels of communication carried contrary information offered by persons and organizations whose credibility would not ordinarily be lightly dismissed, such as the American Cancer Society in 1945, Am.Compl. ¶ 68; JAMA in 1952, *id.* ¶ 80; the Sloane–Kettering Institute in 1953, *id.,* ¶ 82; and the Surgeon General in 1964, *id.,* ¶ 87.

■■ It is settled law that a person who is confronted with inconsistent or contradictory representations may not reason-

tiff must prove reliance as "an essential link" in the proof of causation. *Trifiro,* 845 F.2d at    33 n. 1.

ably rely on one side of the controversy without attempting to resolve the inconsistency or contradiction. *Trifiro,* 845 F.2d at 33. *See also Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 805 (1st Cir.1987). Reliance cannot be deemed reasonable when the alleged misrepresentation is "preposterous or palpably false," *Yorke v. Taylor,* 332 Mass. 368, 124 N.E.2d 912, 916 (1955), *see also Mahaney v. John Hancock Mut. Life Ins. Co.,* 6 Mass.App.Ct. 920, 380 N.E.2d 140, 141 (1978), or when minimal investigation would have revealed the truth, *see Mahaney,* 380 N.E.2d at 141, *Restatement (Second) of Torts* § 541, cmt. a, *Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1145 (3d Cir.1993),[4] or simply when a party "close[s][its] eyes and passively accept[s] the contradictions" that exist in the information available to it. *Kennedy,* 814 F.2d at 805. These cases are applications of a basic rule: "Explicit conflict engenders doubt, and to rely on a statement the veracity of which one should doubt is unreasonable." *Trifiro,* 845 F.2d at 33–34.

The point might be illustrated by a fable. A traveler in a strange land approached a fork in the road. One way led safely to the next town; the other led to a dangerous cliff. Looking for guidance, the traveler inquired of each of two local inhabitants which road he should take to get to town. The first, claiming to know the way well, pointed to the right fork. The other, claiming similar knowledge, pointed left. The traveler went left, to his chagrin. Was he justified in relying on the advice of the one, purportedly knowledgeable, who pointed him in that direction, ignoring the contradictory advice? Under Massachusetts law, the answer is "no."

It is a fundamental premise of the plaintiff's claims that smoking is hazardous to health and that the defendants were trying to *obscure* that truth. It follows that those who warned of the health risks of smoking must have been speaking the truth. Apart from the plaintiff's very summary allegations that it relied to its detriment on the defendants' misrepresentations and deceit, the complaint says nothing about how or why the Fund was disabled or dissuaded, at any relevant time, from relying on the very information it now asserts is true and reliable.[5] In other words, the complaint offers no basis for concluding that it was *reasonable* for the plaintiff to rely on the defendants' information as opposed to the contradictory information from other sources also in the public domain. Since the reasonableness of its reliance is part of the plaintiff's case, the deficiency is fatal to the claims. *See generally, Robertson v. Gaston Snow & Ely Bartlett,* 404 Mass. 515, 536 N.E.2d 344, 349 (1989) (plaintiff must plead and prove that reliance was reasonable).

*Count IV*

Count IV alleges that the defendants engaged in a conspiracy "for the unlawful purposes of suppressing and concealing material scientific and medical information concerning smoking, addiction and diseases; representing falsely to the public at various times that they would undertake a special responsibility and duty to Plaintiffs

---

**4.** *Wittekamp* was decided according to Pennsylvania law, which requires proof of fraudulent nondisclosure by clear and convincing evidence. The court expressed "no view as to what the result might be under a lesser standard." 991 F.2d at 1145. The case is instructive here not for its assessment of the quantum of proof adduced at the particular trial under review, but for the principle it applied—that a person claiming to have been misled must not have shut his eyes to obvious facts that countered the fact allegedly misrepresented.

**5.** Notice may also be taken of the comment to § 548 of the *Restatement:* "In order to justify recovery, the recipient of a misrepresentation must rely upon the truth of the misrepresentation itself, and his reliance upon its truth must be a substantial factor in inducing him to act or to refrain from action.... It is not enough that, without belief in its truth, he proceeds to enter into the transaction in the expectation that he will be compensated in an action for damages for its falsity." *See Trifiro,* 845 F.2d at 34.

and their participants to undertake all possible efforts to learn all the facts and to discover and disclose the truth about smoking and health; and of keeping the public ignorant of the defective and unreasonably dangerous condition of cigarettes." Am.Compl. ¶ 275. "In furtherance of Defendants' conspiracy, they also intentionally restrained and suppressed research, development, production and marketing of safer cigarettes. Defendants, in furtherance of their conspiracy, gave encouragement and substantial assistance to each other and otherwise aided and abetted each other in perpetrating these wrongful acts." *Id.* ¶ 279.

■ Massachusetts law appears to recognize two variants of a cause of action for "civil conspiracy." The first, sometimes called "true conspiracy," *Fleming v. Dane,* 304 Mass. 46, 22 N.E.2d 609, 611 (1939), is a "rare," *id.*, and "very limited" cause of action. *Aetna Casualty Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563 (1st Cir. 1994). The plaintiff must allege and prove that by "mere force of numbers acting in unison" the defendants exercised "some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had." *Fleming,* 22 N.E.2d at 611 (citations and internal quotations omitted). This cause of action seems to have been applied principally to remedy direct economic coercion, as in "the combined action of groups of employers or employees, where through the power of combination pressure is created and results brought about different in kind from anything that could have been accomplished by separate individuals" or in other kinds of concerted refusals to deal. *Id.*

The other version of "civil conspiracy" in Massachusetts is "more akin to a theory of common law joint liability in tort." *P & B Autobody,* 43 F.3d at 1564. Under this theory, a defendant may be held liable for actions done by others pursuant to a common design or with the defendant's substantial assistance or encouragement. *See*

*Kyte v. Philip Morris, Inc.,* 408 Mass. 162, 556 N.E.2d 1025, 1027 (1990); *Kurker v. Hill,* 44 Mass.App.Ct. 184, 689 N.E.2d 833, 836–37 (1998).

In brief, the distinction between the two versions is this: For "true conspiracy" the plaintiff must prove that concerted action gave the defendants a "peculiar power of coercion" over the plaintiff enabling them to bring about results that are different in kind from what any of them could achieve individually. The exercise of this "peculiar power of coercion" is itself the wrong, and no other tortious act need be shown. In contrast, the "concerted action" version extends liability to those who assist or encourage others to commit torts without necessarily any proof either of a "peculiar power of coercion" or even of an explicit agreement among the defendants. Of course, there can be no joint liability for a tort unless there has been a tort, so the "concerted action" version depends on proof of underlying tortious conduct for which liability can be assigned. *See Santiago v. Sherwin Williams Co.,* 3 F.3d 546, 552 (1st Cir.1993). While the term "civil conspiracy" apparently has been used loosely to apply to both versions, only the "true conspiracy" version defines an independent cause of action; the "concerted action" version simply defines who may be liable for other torts. *See DesLauries v. Shea,* 300 Mass. 30, 13 N.E.2d 932, 935 (1938).

■ It is not clear whether the plaintiff means to invoke one, the other, or both, of these theories. Both the complaint itself and the plaintiff's memorandum in opposition to the motion to dismiss present the claim as more or less an amalgam of the two. In substance, it appears that what the plaintiff claims is that the defendants agreed to manipulate their own scientific research, conceal unfavorable facts, and disseminate their own disinformation about cigarettes. In its memorandum, the Fund describes this as an example of a " 'coercive type' conspiracy," Pl.'s Mem., at 48 (Dkt. No. 70), thus apparently invoking the

"true conspiracy" cause of action. The allegations of the complaint do not support this theory, however, because they are insufficient to plead the kind of "peculiar power of coercion" over the plaintiff that the cause of action for "true conspiracy" requires. The complaint does not allege that the defendants had any power of coercion peculiarly focused against the Fund. Rather, it alleges that the defendants' conspiracy to mislead was directed at the public generally. There is no question that an allegation of a generally exerted and generally felt power of coercion is not sufficient to plead the independent tort of "true conspiracy" as recognized in Massachusetts.[6]

What the plaintiff really describes is joint tortious behavior, consistent with the "concerted action" theory. The complaint throughout quite clearly alleges that the defendants acted jointly pursuant to a common scheme. However, liability attaches (if at all) not because they have acted in concert, but because, acting in concert, they have committed a tort, such as misrepresentation. The complaint pleads that the defendants are liable under several different tort theories. Some defendants may be liable by reason of their own conduct, others because they acted in concert with those primarily liable. In either case, the plaintiff must make out the underlying tort. For the reasons stated elsewhere in this opinion, the Court has concluded that the amended complaint fails to state a claim under any of the asserted tort theories. That being the case, the "concerted action" theory of conspiracy necessarily fails as well.

*Counts V and VI*

■ Counts V and VI plead, respectively, that the defendants intentionally and negligently breached a "special duty" owed to the plaintiff. Am.Compl. ¶¶ 283–97. From its memorandum opposing the motion to dismiss these counts, it appears that the Fund bases these counts on a principle described in *Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331, 336 (1983), following the *Restatement (Second) of Torts* § 323 (1965), which provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking."

One need only recite the principle to notice how inapt it is to the relationship between the plaintiff Fund and the defendants. The claim founders on the first phrase of the *Restatement* principle: the Fund must establish that the defendants undertook to render services for it that were necessary to protect its assets. Nothing in the factual allegations offers proof of *any* relationship between the Fund and the defendants, much less a special, protective relationship.

In *Mullins*, the Massachusetts Supreme Judicial Court held that a college owed its resident students a duty to use reasonable care to protect them from injury by third parties. In addition to the *Restatement*, the Court drew upon its precedents. All of the Massachusetts cases looked to by the Court in support of its recognition of the duty involved either common carriers or persons having charge of premises. *See Mullins*, 449 N.E.2d at 335–37 and n. 9. The Fund has pointed to no authority that holds or even hints that Massachusetts would apply the principle to find a "special duty" within the meaning of Section 323 by reason of the "relationship" between sell-

---

**6.** The plaintiff also argues that the coercion was directed at its participants and their beneficiaries. That does not help the cause. As described in the complaint, the defendants' deceptions were aimed at all smokers, not just those who are participants in the plan administered by the Fund.

ers of a product and purchasers of that product, much less between sellers and the purchasers' health insurers. These counts fail to state viable claims under Massachusetts law.

*Count VII*

■ In Count VII, the complaint alleges that the defendants have breached duties owed to the Fund's participants and have thereby caused them to suffer smoking-related illnesses; that the Fund has paid its participants' medical expenses, resulting in a benefit to the defendants, who are legally responsible for such expenses; and that the defendants have thus been unjustly enriched at the expense of the Fund, and so should be ordered to pay restitution to the Fund. The Court has previously construed this claim as one in the nature of subrogation, which the fiduciaries of the plan may enforce pursuant to the terms of the plan. So construed, Count VII states a cause of action upon which relief may be granted.

The Fund, however, asserts that this is not a subrogation claim, but rather a claim of its own for damage it has suffered as a result of the harm done to its participants. Apart from subrogation, Massachusetts law does not recognize such a claim for derivative injury. Such claims have been rejected as too remote and indirect. *See Anthony v. Slaid*, 11 Met. (52 Mass.) 290 (1846). Nor is there a need to recognize one, since subrogation is a readily available remedy.

The Fund contends, however, that it would be an inadequate remedy to force it to prove its damages participant by participant, as it were. *See* Pl.'s Mem., at 56 (Dkt. No. 70) ("It cannot seriously be urged that the maintenance of separate action[s] of subrogation for each such member is an adequate substitute for the instant action."). What the Fund wants is a kind of subrogation-in-gross (without calling it subrogation). Under Massachusetts law there is no such animal, and for a

good reason. As the Fund puts it, the defendants have been "unjustly enriched" to the extent that costs they should be legally responsible for were paid instead by the Fund. However, whether the defendants should be legally responsible for a participant's medical expenses depends on many factors, including factors specific to that participant. The premise of the unjust enrichment theory—the defendants' legal responsibility for medical expenses—must be determined one participant at a time. The defendants are not subject to liability-in-gross, at least under the theories advanced elsewhere in the complaint, and the Fund is concomitantly not entitled to subrogation-in-gross.

*Count VIII*[7]

Finally, Count VIII asserts a theory of breach of warranty. Am.Compl. ¶¶ 306–15. The claim is that the defendants breached warranties made to the Fund's participants, and the Fund was thereby caused to pay medical expenses of the participants. Again, the Fund eschews its obvious subrogation remedy. This novel breach of warranty theory is nothing more than the "unjust enrichment" theory applied to a particular cause of action that the participants might have. The Fund has no direct cause of action, though it is subrogated to the causes of action its participants have.

*Conclusion*

For the reasons set forth above, the plaintiff's motion to amend the complaint is GRANTED.

The defendants' motion to dismiss the amended complaint is DENIED as to Count VII insofar as it presents subrogation claims but GRANTED as to all other claims.

An appropriate order shall enter.

---

7. The Amended Complaint entitles this count "Count VII"; however, since this count immediately follows "Count VII" for unjust en-

richment, this appears to be a typographical error.