# United States Court of Appeals
## For the First Circuit

No. 99-2006

HOWARD SANDS,

Plaintiff, Appellant,

v.

RIDEFILM CORPORATION and BERNARD PLISHTIN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Lynch, Circuit Judge.

Edward C. Cooley, with whom Giarrusso, Norton, Cooley & McGlone, P.C. was on brief for appellant.

Scott C. Moriearty, with whom Daniel J. Jackson and Bingham Dana LLP were on the brief for appellees.

**BOWNES, <u>Senior Circuit Judge</u>.** Plaintiff-Appellant Howard Sands brought suit for damages in the United States District Court for the District of Massachusetts against Defendants-Appellees Ridefilm Corporation and its vice-president, Bernard Plishtin. The plaintiff asserted diversity jurisdiction under 28 U.S.C. § 1332(a) (1994), and alleged breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraud (Count III), negligent misrepresentation (Count IV) and promissory estoppel (Count V). The defendants moved for summary judgment on all counts. The magistrate judge (Neiman, M.J.) recommended that summary judgment be allowed as to Counts I, II and III, but denied as to Counts IV and V. The district court (Ponsor, J.) granted defendants' motion for summary judgment on all counts, disposing of the case in its entirety. This appeal followed.

## I.

In April 1993, Plishtin, vice president of Ridefilm, and an employee of its parent company, Trumbull Company, Inc., placed a job listing at the Harvard University Graduate School of Business Administration, seeking applications for "general

management positions." It explicitly stated that "[t]he Company is now in the process of finalizing its initial financing and expects to be in a position . . . to hire a full-time manager . . . ." Sands submitted his application. After a series of interviews with Plishtin and various other employees, Plishtin informed Sands that he had been chosen for the position. Shortly thereafter, the defendants flew Sands to Las Vegas to meet company personnel and acquaint him with one of the defendants' projects.

The defendants also invited Sands, his parents and his fiancée to visit the company's headquarters in the Berkshire Mountains in Massachusetts on June 10 and 11, 1993. During this visit, Sands and Plishtin met to discuss the specifications of Sands's employment. Sands alleges that they reached agreement with respect to salary, bonus, moving expenses and health and life insurance. The defendants contend, however, and the record reflects, that at that point they did not reach agreement on all of those terms. In fact, at his deposition, Sands indicated that the parties had not reached complete agreement on all of these terms. Specifically, Sands stated in his deposition: "We were very close on base compensation, though we hadn't finalized that. . . . We agreed that there would be an equity position in the one-to-two-percent range of the company, though the details

of that would have to be worked out later."  The parties discussed an equity share for Sands, but agreed that they would make a final determination of the exact amount of equity when the company secured equity financing.  The plaintiff alleges that Plishtin assured Sands that the equity deal was "imminent and expected to close within weeks."

On June 18, 1993, Plishtin wrote a memorandum to Doug Trumbull (president of Trumbull/Ridefilm), indicating that he would like to draft a letter to Sands "in which we can outline the basis of his deal . . . [and] the letter will be constructed such that it is clear that we will only be able to commit to a starting date and construct a formal employment agreement upon confirmation of a source of funding."  The memorandum concluded: "Howard understands that we are no longer interviewing for this position and I have told him that he is our choice for the job. Needless to say, we will look forward to making this official as soon as possible."

On June 24, 1993, Plishtin sent Sands a letter memorializing their previous conversations.  The letter stated that Sands's starting date would be "approximately July 15, but no later than July 29. . . . [and a]t the time that we confirm this starting date an interim employment contract will be drafted," that will contain information concerning salary,

moving expenses, health benefits, and an equity and compensation

plan.  The letter concluded:

> You understand that we are no longer interviewing for this position and you are our choice for the job.  Needless to say, we will look forward to making this official as soon as possible.  We will be able to commit to a starting date and construct a formal employment agreement upon confirmation of a source of funding.

On July 1, 1993, Plishtin wrote to Sands, indicating

that financing remained a problem.  The letter stated, in

pertinent part:

> I'm sorry that I'm not writing today with a binding offer.  Getting . . . funding remains  the hurdle, since our arrangement and our ability to set a formal starting date for you remains contingent upon this funding.

The funding never materialized.  Plishtin sent Sands a letter on

November 23, 1993, which read, in pertinent part:

> I find no basis for your suggestion that you are due something from Ridefilm.  To repeat what I believe has been made more than evident to you a number of times in our conversations and correspondences with you, our ability to hire you has from the outset been contingent upon successful financing of the Ridefilm business. . . . Your decision to stop interviewing was clearly made despite the contingent nature of this situation.  As you know, I suggested you not pass on other opportunities and have in fact

-5-

recommended you for other positions, at least one of which you have pursued.

To repeat, an employment arrangement between you and Ridefilm along the lines described in my letter of June 24 would have been constructed upon confirmation of a source of funding for this business, and the contingent nature of this offer was repeated in my letter of July 1. Unfortunately[,] this funding has not taken place even at this late date. . . . Given the disturbing positions taken and contentions made in your letter, I believe there is nothing further for us to discuss with you.

Sands remained unemployed until March 1994. He claimed that the defendants represented that financing was not an issue. Sands also claims to have reasonably believed that he had a job with the defendants and alleges that he rejected other employment opportunities offered to him.

## II.

We review the district court's grant of summary judgment de novo. See Dubois v. United States Dep't of Agric., 102 F.3d 1273, 1283 (1st Cir. 1996). Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the

-6-

parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Rather, to be considered material, a disputed fact must have the potential to "affect the outcome of the suit under the governing law." Id. at 248.

The party moving for summary judgment, here the defendants, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25).

In the final analysis, upon examining the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor, see Dubois, 102 F.3d at 1284, we are required to determine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

-7-

## A.    Breach of Contract (Count I)

The plaintiff alleges that the defendants breached their agreement with him by reneging on a binding employment agreement.  "It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement."  Situation Management Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000); see Wilcox, Inc. v. Shell E. Petroleum Prods., Inc., 283 Mass. 383, 388 (1933).  "[I]t is essential to the existence of a contract that its nature and the extent of its obligations be certain.  This rule has been long established."  Caggiano v. Marchegiano, 327 Mass. 574, 579 (1951).

Defendants argue that an enforceable contract was never created because the parties failed to reach agreement on all essential terms of an employment contract.  Specifically, the defendants contend that the parties had not yet reached agreement on the plaintiff's compensation.  The amount of compensation is an essential term of an employment contract. See Ferrera v. Carpionato Corp., 895 F.2d 818, 822 (1st Cir. 1990).

The magistrate judge found that, although the essential terms of the contract lacked specificity, all essential terms of

-8-

employment were stated, and "it may well be considered contractually binding." He also stated, however, that the conditional language of the letters created ambiguity in the essential terms and "[made] evident that the parties did not come to an agreement about the essential terms of their contract." The district court adopted his findings of law and fact on this count and granted the defendants' motion for summary judgment.

The plaintiff now argues that because the judge found the contract language of the essential terms to be ambiguous, it became a question of fact for the jury to determine the parties' intent. We do not address the merits of this contention because we find that a condition precedent to the contract had not been fulfilled, thus defeating the alleged contract regardless of the language of the essential terms.

Even assuming arguendo that all essential terms of the contract had been agreed upon, an otherwise enforceable contract will be defeated by the non-occurrence of a condition precedent. See Tilo Roofing Co., Inc., v. Pellerin, 331 Mass. 743, 746 (1954) (holding that if a condition is shown not to have been performed, there is no binding obligation). "A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises

under the contract.  If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45 (1991) (citations omitted).

After careful review of the record, we find it clear that the alleged employment agreement between the plaintiff and the defendants was contingent upon Ridefilm receiving equity financing.  Because that financing never materialized, no enforceable contract was formed.

Throughout the entire interview process, the defendants expressly stated that the position was contingent upon equity financing.  The initial job posting, see infra, made clear that the company had an expectation of hiring in the future, not a current ability to do so.

Each document received by the plaintiff from the defendants expressly stated that the position was contingent upon financing.  The memorandum of June 18, 1993, from Plishtin to Doug Trumbull, a copy of which was sent to the plaintiff, stated, in pertinent part:

> Let me reiterate that the letter will be constructed such that it is clear that we will only be able to commit to a starting date and construct a formal employment agreement upon confirmation of a source of funding.

The letter, dated June 24, 1993, from Plishtin to the plaintiff contained a copy of the June 18th memorandum and stated, in pertinent part:

> You understand that we are no longer interviewing for this position and you are our choice for the job. Needless to say, we will look forward to making this official as soon as possible. We will be able to commit to a starting date and construct a formal employment agreement upon confirmation of a source of funding.

And finally, the letter of July 1, 1993, reiterated that funding remained an obstacle. It stated, in pertinent part:

> I'm sorry that I'm not writing today with a binding offer. Getting . . . funding remains the hurdle, since our arrangement and our ability to set a formal starting date for you remains contingent upon this funding.

These three documents, which the plaintiff admits he received, made it unmistakable that the plaintiff's employment with the defendants was contingent upon Ridefilm receiving funding. Because that condition precedent was not met, no binding obligation existed and no enforceable contract was created between the parties.

We affirm the district court's summary judgment for the defendants on the ground that a condition precedent to the contract had not taken place. This is a different rationale than that used by the district court. There can be no question

-11-

of our power to rely on a different ground than the district court did in affirming its judgment: "This standard of review permits us to uphold the district court's summary judgment regardless of whether we reject or adopt the rationale, so long as an 'independently sufficient ground' is made manifest by the record." Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464, 466 (1st Cir. 2000); see also Bridges v. MacLean-Stevens Studios, Inc., 201 F.3d 6, 9 (1st Cir. 2000).

**B.      Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)**

In the second count of his complaint, the plaintiff alleges that the defendants breached their implied covenant of good faith and fair dealing with the plaintiff. Contracts for employment under Massachusetts law contain "an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of the contract." Fortune v. National Cash Register Co., 373 Mass. 96, 101 (1977). To prevail under the Fortune doctrine, a plaintiff must demonstrate that the employer terminated the plaintiff for the purposes of "depriving the employee of money that he fairly earned and legitimately expected." King v. Driscoll, 424 Mass. 1, 7 (1996) (quoting Kravetz v. Merchants Distribs., Inc., 387 Mass. 457, 463 (1982)).

-12-

Under <u>Fortune</u>, litigants may not recover damages for future, prospective benefits not earned by past services. <u>See</u> <u>Sargent</u> v. <u>Tenaksa, Inc.</u>, 108 F.3d 5, 8 (1st Cir. 1997) ("[T]he Supreme Judicial Court has confined recovery to identifiable future benefit[s] . . . reflective of past services, and firmly excluded prospective benefits not thus tied to past services.") (alterations in original) (internal quotation marks omitted); <u>see also</u> <u>McCone</u> v. <u>New England Tel. and Tel. Co.</u>, 393 Mass. 231, 235 (1984); <u>Gram</u> v. <u>Liberty Mut. Ins. Co.</u>, 391 Mass. 333, 335 (1984). Here, it is undisputed that the plaintiff never performed <u>any</u> services to or for the defendants, and thus is due no compensation. The district court properly adopted the recommendation of the magistrate judge, which was based on the cases cited above and concluded that the defendants were entitled to summary judgment on the breach of the implied covenant of good faith and fair dealing count.

## C.      Fraud (Count III)

In the third count of his complaint, the plaintiff alleges that the defendants "fraudulently misrepresented material facts to the plaintiff in order to induce [him] to forego other employment opportunities and to decline other offers of employment [and that t]hese misrepresentations were made with the knowledge that they were false and with the intent

-13-

to deceive the plaintiff, who reasonably relied upon them." To recover under a fraud theory, a plaintiff must prove "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963) (internal quotation marks omitted).

The magistrate judge, in his Report and Recommendation, found that the defendants were entitled to summary judgment on the fraud claim. He stated: "The nearest Plaintiff comes [to alleging a proper fraud claim] is his allegation that Ridefilm was never close to obtaining financing. However, there is simply no evidence that Ridefilm knew it would not attain such funding within the desired time frame." The plaintiff did not object to this ruling. The district court adopted the magistrate judge's recommendation as to this count and allowed the defendants' motion for summary judgment on the fraud claim. Plaintiff's failure to object to the ruling of the magistrate judge constituted waiver.

The plaintiff now argues for the first time that the defendants misrepresented the material fact that his employment was contingent upon Ridefilm obtaining funding. We need not

-14-

address this issue because the plaintiff waived his objection to the entry of summary judgment by failing to raise this objection before the district court.  See Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."); see also Rules for U.S. Magistrates 3(a)(B) ("[F]ailure to file timely and appropriate objections to that report and recommendation . . . shall constitute a waiver of the right to appeal the district court's order to the United States Court of Appeals.").  The plaintiff has waived this argument and we will not address it for the first time on appeal.

**D.      Negligent Misrepresentation (Count IV) and Promissory Estoppel (Count V)**

In Counts IV and V of the complaint, the plaintiff alleges negligent misrepresentation and promissory estoppel, respectively.  The plaintiff alleges that "the defendant negligently made misrepresentations of material fact to the plaintiff in order to induce him to forego other employment opportunities and to decline other offers of employment."  The plaintiff further alleges that he reasonably relied on defendants' misrepresentations to his detriment.  The magistrate

-15-

judge, in recommending that summary judgment be denied as to the fourth and fifth counts, concluded that the plaintiff's reliance was not unreasonable as a matter of law. The district court, noting that "the issue presents a close question," disagreed.

Promissory estoppel and negligent misrepresentation require the plaintiff to show that his reliance was reasonable. See Trifiro v. New York Life Ins., Co., 845 F.2d 30, 33 (1st Cir. 1988) ("[I]f [plaintiff's] reliance is found unreasonable under the circumstances, . . . these claims must fail."); see also Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1124 (1st Cir. 1995) ("An element of promissory estoppel is that the party invoking it must have *reasonably* relied on the alleged promise to his detriment.") (emphasis in original) (internal quotation marks omitted).

The plaintiff claims that Plishtin repeatedly told him that "you are our man;" "you will work for us;" and "[you are] our choice for the job." The plaintiff contends that he relied on those assurances to his detriment and declined an offer of employment from Foothill Capital Corporation, his former employer. Plaintiff argues that his reliance on the defendants' statements was both justifiable and reasonable. We disagree.

Sands says that his promissory estoppel and negligent misrepresentation claims "had fully matured in June when [he]

-16-

declined an offer of employment and stopped interviewing in reliance upon the defendants' representations." Assuming arguendo that he has not waived this argument and that there is an adequate factual basis to support his claims of reliance, we will test the reasonableness of his reliance during three relevant time periods: the time prior to the June 10 and 11 meetings, the time between the June 10 and 11 meetings and the receipt of the June 18 memo and the June 24 letter, and the time after Sands received the June 18 memo and the June 24 letter.

As to the time period prior to the June 10 and 11 meetings, the record reflects that the plaintiff spoke with someone at Foothill in May 1993 and that person inquired whether he wanted to work at Foothill. The plaintiff explained that he was likely going to work for Ridefilm and he would not need any other offers. There was a second, similar phone call between the plaintiff and someone at Foothill in early June 1993. The plaintiff reiterated that he would be accepting a position at Ridefilm and did not need any other offers. The plaintiff, in his deposition, concedes that these conversations took place prior to his graduation from Harvard Business School. At that time, however, any reliance by Sands that he had secured employment with Ridefilm would have been unreasonable. It is uncontested that at that early stage of negotiations, no terms

-17-

of employment had been discussed between the plaintiff and the defendants. In fact, it was not until the June 10 and 11, 1993 meeting at the defendants' place of business that they discussed any of the terms of employment. This was the same weekend as the Harvard Business School Commencement. It is evident that the plaintiff told Foothill that he had secured a position with Ridefilm and did not need any other offers before any terms of an employment agreement were even discussed. It was unreasonable at that time for the plaintiff to presume that he would be employed by Ridefilm.

The second relevant time period for assessing the reasonableness of Sands's reliance covers the time after the June 10 and 11 meetings but before Sands's receipt of the June 18 memo and the June 24 letter. Sands says that during this time period he continued to rely on the defendants' representations by not interviewing with any other companies. This alleged reliance was unreasonable. Although Plishtin may have told Sands that the job was his and that the financing was not a problem, it is clear that several essential terms of his agreement with Ridefilm were still under negotiation following the June 10 and 11 meetings. There was, for example, no agreement on compensation. It was unreasonable for Sands to

-18-

rely on the incomplete, tentative, and unwritten agreement that emerged from the June 10 and 11 meetings.

The third time period is the time beginning when Sands received the June 18 memo and the June 24 letter. At this point, Sands had received written confirmation that certain terms of the deal had been finalized and, he says, he had continued to receive oral reassurance that financing was not an issue. The evidence in the record, however, indicates otherwise. The plaintiff received three written statements from the defendants which clearly said that his employment was contingent upon confirmation of a source of funding. See Memorandum, dated June 18, 1993 ("[W]e will only be able to commit to a starting date and construct a formal employment agreement upon confirmation of a source of funding."); Letter, dated June 24, 1993 ("We will be able to commit to a starting date and construct a formal employment agreement upon confirmation of a source of funding."); Letter, dated July 1, 1993 ("I'm sorry that I am not writing today with a binding offer. Getting . . . funding remains the hurdle, since our arrangement and our ability to set a formal starting date for you remains contingent upon this funding.").

The oral statements allegedly made by the defendants conflict with the express written language of the memo and

letters sent to the plaintiff.  It was unreasonable for the plaintiff to rely on the alleged oral representations because of the express written word.  See Coll, 50 F.3d at 1124; Trifiro, 845 F.2d at 34.  "Confronted by such conflict a reasonable person investigates matters further; he receives assurances or clarification before relying.  A reasonable person does not gamble with the law of the excluded middle, he suspends judgment until further evidence is obtained."  Trifiro, 845 F.2d at 33.

The evidence shows that the plaintiff, in fact, was not content with the alleged conflicting responses he was receiving from the defendants.  The plaintiff did investigate further by seeking clarification from the defendants.  He sought confirmation of his employment and the source of funding.  The written clarification received by the plaintiff in the memo and letters confirms the absence of any final commitment.

We agree with the district court that the plaintiff's reliance upon the defendants' alleged oral representations was not reasonable as a matter of law.  Therefore, the defendants are entitled to summary judgment on the negligent misrepresentation count and the promissory estoppel count of his complaint.

**E.      Conclusion**

For the aforementioned reasons, we find that the defendants are entitled to summary judgment on all counts. The district court's grant of summary judgment on all counts of the complaint is hereby **<u>Affirmed</u>**. Costs awarded to defendants.